## EDWARDSEN *v.* STATE

[No. 480, September Term, 1964.]

132

*Decided June 20, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and McWILLIAMS, JJ.

*Harvey N. Zimmerman,* with whom was *Richard K. Jacobsen* on the brief, for appellant.

*R. Randolph Victor, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Donald Needle, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal by Edward R. Edwardsen from his conviction of statutory burglary by a Baltimore City jury presents for the second time a question as to whether the police had probable cause to make the arrest without a warrant. The conviction of the appellant on the same charge was reversed and remanded in *Edwardsen v. State,* 231 Md. 332, 190 A. 2d 84 (1963), because there was an insufficient showing of probable cause. There is here another question as to whether the trial judge abused his discretion in denying the motion for a change of venue.

When the furniture store located at 1918-1922 Eastern Avenue was opened on the morning of February 14, 1962, it was discovered that the store had been broken into and that thirteen transistor radios valued at $288 and approximately $27 in cash were missing. Entrance had been made by way of the fire escape attached to the apartment house (next door to the burglarized premises) at 1924 Eastern Avenue through a trap-door on the roof of the two-story store sometime after it was closed the night before.

Prior to the burglary, the Southeastern Police Station received an anonymous telephone call to the effect that two men would break into the Ernst Furniture Company "around" February 14th and the desk clerk, who received the call, recorded the information in a "complaint book" kept for that purpose. About two and a half hours after the burglary had been discovered another anonymous call was received stating the name of the burglar and describing the automobile he drove.

At the retrial of this case, Lieutenant Dignan, who had received the second anonymous call, testified that a woman informed him that "if you want the man that broke into the Ernst Furniture Company, he is driving a '53 Pontiac four-door sedan, blue." He further testified that the informer, who refused to identify herself, told him that the operator of the automobile was Edward Edwardsen. Officer Kordek, who was present when the lieutenant received the second call, testified that he heard him mention the name Edwardsen during the conversation with the informer; that the lieutenant relayed to him the information he had received concerning the involvement of the defendant in the burglary; that he knew Edwardsen; that

he knew he drove an automobile fitting the description given by the informer and that he knew what type of work he did and where he was employed.

Shortly after receipt of the second call, Officer McCluskey, who (with another officer) had investigated the burglary after it had been reported over the police radio and ascertained how entry was made and what had been stolen, went to the police station to make his report and was given the details of the second anonymous call. Officer McCluskey, besides knowing Edwardsen and the automobile he operated, also knew that he had a criminal record and was familiar with his conduct, character and reputation, and so testified at the second trial.

After having briefed them, the lieutenant told the officers to "go out and see if they could find the car or Edwardsen." On going to the vicinity of Lakewood Avenue and Boston Street, the officers saw the automobile they were looking for (from which the license tags had been removed) on the parking lot across from Edwardsen's place of employment and went to the office to inquire for him. There they learned that he had left the office only a few minutes before. They then went to the shop. There they were told by a fellow employee that Edwardsen was "just around here playing a radio and he left." After they had looked around the neighborhood and were about to go back to the shop, the officers saw the defendant walking toward the automobile. He quickened his pace when told to "hold it." And when (contrary to testimony at the first trial) he was asked where he resided and replied "1924 Eastern Avenue," he was arrested forthwith and immediately searched. One of the three keys taken from his pocket was used to start the automobile and, in the ensuing search of it, the police found several transistor radios next to a leather jacket on the floor behind the front seat. The radios were later identified as those stolen from the furniture store and the jacket was identified as belonging to the defendant.

· The first conviction was reversed and remanded for a new trial because the record of the trial merely showed "that the officers 'received certain information,' and [that] as a result thereof they arrested the appellant." But at the second trial, the State, in addition to presenting the details of the information the

police had received both before and after the burglary, produced other evidence bearing on the issue of probable cause, the relevant portions of which are above set forth.

(i)

The appellant, citing *Beck v. Ohio,* 379 U. S. 89 (1964), and other cases, for the proposition that the information the police received from an unknown source was unreliable, contends that there was insufficient evidence to support the finding that the police had probable cause to arrest him without a warrant. The well established rule, of course, is that a police officer lacks authority to make an arrest for a felony without a warrant unless he has reasonable grounds or probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested had committed the offense. *Johnson v. State,* 238 Md. 528, 209 A. 2d 765 (1965) ; *McChan v. State,* 238 Md. 149, 207 A. 2d 632 (1965) and cases cited therein. But we think that the information the police received from the anonymous informer or informers on separate occasions, coupled with the knowledge the police had as to the defendant's name and prior criminal record, as to his work and place of employment, as to what had been stolen and his "playing" of a radio soon thereafter at his place of employment, as to the identity of the parked automobile toward which he was walking when the police caught up with him and as to his residing next door to the burglarized premises, was sufficient to justify a belief that the defendant committed the burglary and constituted reasonable grounds for the arrest of the defendant without a warrant. Clearly there was far more here to justify a belief that the defendant was the person who had committed the crime than there was in *Draper v. United States,* 358 U. S. 307 (1959), where it was held that a narcotic agent (who, besides a description of the person he was looking for, knew only that the defendant had gone to obtain a supply of narcotics and would return on a certain train on a certain day) had sufficient probable cause to make the arrest without a warrant. *Cf. Brish v. Carter,* 98 Md. 445, 57 Atl. 210 (1904), where the police were absolved of having made a false arrest because the telegraphic information they had received afforded reasonable grounds for suspecting that the plaintiff was guilty of stealing

a horse answering the detailed description of the one that had been stolen.

In *Beck v. Ohio, supra,* where there was no evidence as to what information the police had received or from what source it had come and the police knew no more than what the accused looked like and that he had a criminal record before they made the arrest without a warrant and thereafter searched the accused and the automobile he was driving, the Supreme Court of the United States, in setting aside a conviction in the state court, had this to say (at p. 91) with regard to the validity of the search which was incidental to the arrest:

> "The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar v. United States,* 338 U. S. 160, 175-176; *Henry v. United States,* 361 U. S. 98, 102."

Not only is it apparent that the *Beck* case is distinguishable from the case at bar on the facts, but, as was pointed out, in commenting on *Brinegar v. United States, supra,* in *Graham v. State,* 239 Md. 521, 212 A. 2d 287 (1965), the rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion. For other recent cases involving probable cause in other situations, see *Jones v. State,* 242 Md. 95, 218 A. 2d 7 (1966) ; *Hopkins v. State,* 239 Md. 517, 211 A. 2d 831 (1965) ; *Taylor v. State,* 238 Md. 424, 209 A. 2d 595 (1965). We hold there was probable cause for making the arrest and since the arrest was valid, the search and seizure incident thereto was permissible.

(ii)

The contention that the trial judge abused his discretion in denying a change of venue is based on the fact that Judge Harris, who sat at the second trial, was one of the panel of judges that heard and denied the motion for a new trial following the original conviction. Section 7 of Article IV of the Constitution of Maryland provides that "no judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him by affinity or consanguinity * * *." The claim is that Judge Harris had an interest in the outcome of the case, but, as was pointed out in *Ex parte Bowles,* 164 Md. 318, 165 Atl. 169 (1933), the word "interested" in the context of the constitutional prohibition refers to a pecuniary interest in the litigation or the result thereof. There was no such interest here.

Furthermore, since this was a non-capital criminal case, the refusal of the trial judge to grant a change of venue is subject to review only when it is shown that the judge abused his discretion. *McGowan v. State,* 220 Md. 117, 151 A. 2d 156 (1959), *aff'd.* 366 U. S. 420 (1961). There was no such showing in this case.

The appellant, without the permission of this Court and unknown to his appellate counsel, undertook to file, on his own initiative, what he called a "supplemental brief" in which he asserts that his "constitutional rights were impaired by the false testimony of the arresting officer." Ordinarily, questions raised by appellants *pro se* are not considered, but because there is a possibility that the question might be raised in a post conviction proceeding, and there is enough in the record for us to decide whether or not the contention has any merit, we shall dispose of it now. Based on an allegation that the arresting officer made inconsistent statements as a witness at the two trials, the real contention is that his testimony was divested of all probative weight. The contention has no merit. Although it has been said that if the testimony of a witness is so contradictory that it has no probative force a jury cannot be invited to speculate about it or to select one or the other contradictory statement as the basis of a verdict, *Kaufman v. Baltimore Transit Co.,* 197 Md. 141, 78 A. 2d 464 (1951), and although the

same criterion is applicable to criminal as well as civil cases, *Kucharczyk v. State,* 235 Md. 334, 201 A. 2d 683 (1964), the rule is applicable only to the testimony of a witness given at the same trial and is not applicable where the testimony conflicts with statements made before trial or at another trial or other legal proceeding. *Brooks v. Daley,* 242 Md. 185, 218 A. 2d 184 (1966).

*Judgment affirmed.*