SAMUEL BROWN *v.* STATE OF MARYLAND

[No. 51, September Term, 1968.]

*Decided November 13, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert Allen Sapero* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Stephen Montanarelli, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the majority opinion of the Court. ANDERSON and ORTH, JJ., dissent. Dissenting opinion by ORTH, J., in which ANDERSON, J., concurs, at page 373 *infra.*

The appellant was convicted of storehouse breaking and stealing $5.00 or upwards under Maryland Code, Art. 27, Sec. 33 in a non-jury trial in the Criminal Court of Baltimore and sentenced to a term of three years. In this appeal, it is first contended that the appellant was illegally arrested and that the articles seized as an incident thereto were, therefore, improperly admitted into evidence.

The record indicates that a sexton of a church in Baltimore City reported for work on Sunday morning, November 12, 1967, and noticed a window had been broken; that the doors to the catacombs under the church were broken; and he discovered that a case of Maxwell House coffee, a case of Hawaiian punch, two boxes of Ritz crackers, some jewelry and a baby carriage were missing. The food items were, apparently, to be used in a pre-service social hour and the baby carriage and jewelry were left over from a church bazaar.

A plain clothes police officer testified that about 4:45 A.M. on the morning of November 12, 1967, at the intersection of Hamilton Street and Park Avenue, several blocks from the church, he observed a man pushing a baby carriage in a parking lot situate to the rear of row houses in the 200 block of Franklin Street. He observed the man turn south on Tyson Street and when he reached the corner the man had disappeared. The officer proceeded down Tyson Street, and when he reached its intersection with Franklin Street he observed the man and baby carriage going west on Franklin Street. The officer thereupon alighted from his unmarked car, walked west on Franklin Street and found the man with the baby carriage standing inside an area of a commercial establishment used as a patrons walkway display entrance. Upon reaching the man, whom he identified as the appellant, he looked into the baby carriage and observed a price tag of $7.50 affixed thereto and "cans of coffee and crackers and some clothing strewed about and boxes of jewelry." He also observed that the appellant "was breathing hard as if to have been running." The officer asked him his name and "he told me his name was Samuel Brown. I asked him where he lived. He said 'I don't have to tell you that.' I asked him where he got that property. He said 'I found it in the alley.'" The officer then testified that since "there had been a great amount of burglaries in the area * * * I placed him under arrest for investigation of burglary." He conceded that at the time of the arrest he had no knowledge that the church or any other building in the area had been broken into that night.

It is well established that an arrest without a warrant for a misdemeanor being committed in the presence of the arresting officer is lawful. And it is equally well settled that an arrest by

a police officer is lawful if he had probable cause at the time of the arrest to believe that a felony was being committed or had been committed and that the person arrested was committing or had committed it. *Edwardsen v. State,* 243 Md. 131; *Leatherberry v. State,* 4 Md. App. 300; *Simms v. State,* 4 Md. App. 160; *Boone v. State,* 2 Md. App. 479. "The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Edwardsen v. State,* supra, 136.

As was so cogently pointed out by Judge Hammond (now Chief Judge) in *Braxton v. State,* 234 Md. 1 (at p. 6):

> "The freedom of the individual from unwarranted or unjustified harassment and molestation by the police and his right to privacy, guaranteed by the Constitutional proscriptions against unreasonable searches and seizures on the one hand, and the needs of society on the other, require the striking of a balance not easy to achieve and the drawing of lines not always easy to draw."

The case at bar highlights the soundness of the foregoing statement. To the arresting officer, as perhaps to any reasonably cautious citizen, the sight of a man pushing a baby carriage on a parking lot at 4:45 A.M. on a Sunday morning was unusual and, undoubtedly, created a suspicion in the officer's mind that all was not right. Likewise, after listening to the appellant's explanation and his refusal to give his address, the officer's suspicion may have heightened. But the officer himself readily conceded that he was unaware that the church or any other building had been broken into that night. Thus, one of the essential ingredients of the rule of probable cause—reasonable grounds to believe that a felony had been committed—was not within the knowledge of the officer unless it can be said that a reasonably cautious man, under the facts within the officer's purview, would have had probable cause to believe that a felony had been committed and that the felony had been committed by the appellant. Measured by this standard, we are of the opinion that the facts and circumstances within the officer's knowledge would

not compel a reasonably cautious man to conclude that a felony had been committed, since the known conduct of the appellant at the time of the arrest was, at the least, equally consistent with innocent travel on a public thoroughfare. We are not here dealing with items of contraband such as weapons, narcotics, or burglar tools. Nor are we dealing here with items which in themselves are so unique or unusual as to give rise to a probability that they had been stolen. One can think of no more innocent conduct than a baby carriage filled with food stuffs being pushed by a husband or father on a public thoroughfare and, in this day of 24 hour work shifts, we are not prepared to find that such conduct, even at 4:45 A.M. on a Sunday morning, gives rise to such a probability that they were the fruits of a felony as to justify the warrantless arrest of the individual involved in such conduct.

It has been suggested by the State that the element of flight exists in this case and it is true that "flight, though not conclusive, is usually evidence of guilt." *Price v. State,* 227 Md. 28, 33. However, the only evidence of flight was the testimony concerning the appellant's heavy breathing and the fact that the officer drove around the block to overtake him and found him in a vestibule where he could not be readily seen from any substantial distance. This, in our opinion, is not conclusive evidence of flight for it is equally consistent to conclude that the appellant was unaware that he was being followed by a plain clothes officer in an unmarked car and his heavy breathing could have resulted from the energy expended in pushing the carriage. But even if we assume that flight is an element here, we think the holding of the Court of Appeals in *Young v. State,* 234 Md. 125, is dispositive of the State's contention. There, two men were seen by a police officer, who had been alerted that two individuals had previously been observed trying automobile door handles on a parking lot, one with his arms full of packages, opened the trunk of an automobile. When the officer approached them, they slammed the trunk lid closed, and one of them "began walking off rapidly." He was overtaken and arrested. In holding this to be an illegal arrest the Court said (at p. 130):

"Although it was said in *Price v. State, supra,* at p.

33, that 'flight, though not conclusive, is usually evidence of guilt'—see also *Tasco v. State,* 223 Md. 503, 165 A. 2d 456 (1960) and *Clay v. State,* 211 Md. 577, 128 A. 2d 634 (1957)—there must exist other apparent circumstances upon which to base a reasonable assumption of guilt which was lacking here. In addition to this, in the cases last cited, the defendants literally ran from the police or scene of the crime, while in the present case the defendant just walked away rapidly."

The conduct of the appellant here may have aroused the arresting officer's suspicions. But this is not enough. In assessing the legality of a warrantless arrest, we must find probability, as contra-distinguished from suspicion. It is evident that the line is not easy to draw. It must be drawn on a case by case basis. Where it will be drawn can only be determined after a careful analysis of the facts and circumstances of each case which requires the striking of a balance between the Constitutional right of the individual to be free of unwarranted molestation and the requirements of society to be protected from the ravages of the criminal.

In the case at bar, we are of the opinion that the conduct of the appellant was not such as to give the arresting officer sufficient probable cause to believe that a felony had been committed and, since no misdemeanor was being committed in his presence, the arrest without a warrant was illegal.

The State argues, in the alternative, and the lower court so held, that the arrest was legal because the appellant was committing a misdemeanor in the presence of the officer, *i.e.,* receiving stolen goods. We disagree. To so find requires the inference that the articles in the appellant's possession had been previously stolen; that the appellant knew them to have been stolen; and that he received them with fraudulent intent. There is no more evidence to support such an inference than there is to support a finding of probable cause to believe a felony had been committed. It has also been suggested that the misdemeanor of "asportating larcenied goods" was being committed but this conclusion must rest upon the same unsupportable inference. Since

we are of the opinion that the arrest was illegal it follows that the articles seized as an incident thereto were improperly admitted into evidence. *Mapp v. Ohio,* 367 U. S. 643; *Belton v. State,* 228 Md. 17; *Young v. State, supra; McCarthy v. State,* 2 Md. App. 400; *Randolph v. State,* 1 Md. App. 441.

In view of our holding above, we do not reach the appellant's remaining questions.

*Judgment reversed.*

ORTH, J., dissenting:

I am constrained to dissent from the majority opinion because I think the arrest of the appellant was valid. The general rule is firmly established that a warrantless arrest by a police officer is valid where he has probable cause to believe that a misdemeanor has been or is being committed in his presence or view and that the arrestee is the misdemeanant. *Robinson v. State,* 4 Md. App. 515, 522; *Thompson v. State,* 4 Md. App. 31, 37; *Salmon v. State,* 2 Md. App. 513, 522. The majority correctly state the rule of probable cause as a "non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion," quoting *Edwardsen v. State,* 243 Md. 131 at 136. That is, whether, at the time of the arrest, the facts and circumstances within the officer's knowledge, by his seeing, hearing, feeling, tasting or smelling [1] were sufficient to warrant a prudent man in believing that the accused was committing a misdemeanor in his presence or view. See *Beck v. Ohio,* 379 U. S. 89, cited in *Edwardsen.* Md. Code, (1967 Repl. Vol.), Art. 27, § 341(a) provides that if any person shall steal, take or carry away personal goods of another under the value of $100 and being thereof convicted, he shall be deemed guilty of a misdemeanor. An essential element of larceny at common law is the asportation of the property, that is a carrying away, at least to some extent. *Clark and Marshall, Law of Crimes* (6th Ed.)

---

1. And see *Robinson v. State, supra,* as to receipt by an officer of a police broadcast that a misdemeanor was committed in the presence of another member of the police team.

§ 12.05, pp. 736-741; *Perkins, Criminal Law,* (1957) ch. 4, § 1E, pp. 221-223. This requirement is not eliminated by the Maryland statute; on the contrary § 341 makes it a misdemeanor to steal, take *or* carry away personal property of another. In *Worthington v. State,* 58 Md. 403, 409, involving a common law larceny, the court stated that at common law, every asportation is a new taking.

In the instant case the issue on which the majority reversed was the admission of evidence seized by a search as a result of the arrest. As they found that the arrest was not valid, it necessarily followed that the search was unreasonable, and as the search was unreasonable, it was error not to exclude evidence obtained thereby. I agree that the facts and circumstances did not justify the arresting officer to believe that a felony had been committed for he could not properly conclude merely from what he observed that the baby carriage and the articles therein were of a value of $100 or upwards. Code, *supra,* Art. 27, § 340. But recognizing that probable cause is more than suspicion and possibility but less than demonstration and certainty, I have no difficulty in finding that the officer had reasonable grounds for belief that the appellant was in the process of carrying away the personal goods of another within the proscription of Code, *supra,* Art. 27, § 341. At 4:45 A.M. the officer saw the appellant pushing a baby carriage in a primarily commercial area of Baltimore City. The officer testified:

> "As I reached the intersection of Hamilton and Park Avenue, I looked directly across the street, which is a parking lot which goes—the asphalt goes right up to the rear of the buildings to the rear of the 200 block of West Franklin Street. At that time about half-way up the block I observed a man pushing a baby carriage. I deemed it necessary because of the time of the morning to investigate.
>
> As I proceeded across the parking lot, the man had turned south on Tyson Street, heading towards the 200 block of Franklin. As I came to Tyson Street and looked south, the man had gone; so was the baby carriage.

I went south on Tyson to Franklin and as I hit the intersection of Tyson and Franklin Street, the man and the baby carriage was going out Franklin Street. I got out of the automobile and proceeded west on Franklin Street * * *

As I proceeded west on Franklin Street on foot, I observed the man and the baby carriage inside the hallway of the vestibule of the commercial premises of 214 West Franklin Street. As I approached him, I asked him what his name was and what he was doing there and I also looked at the baby carriage, at which time I observed there was a price tag on the baby carriage for $7.50. I could see visually cans of coffee and crackers and some clothing strewed about and boxes of costume jewelry. * * *

I asked him what his name was and he told me his name was Samuel Brown. I asked him where he lived and he told me that it wasn't any of my business; that he didn't have to tell me that. I asked him where he got this property at. He said he found it in the rear alley. I also observed at this point that the defendant, Samuel Brown, the man sitting over there with the brown jacket on at the trial table, was breathing heavy as if to have been running."

He then placed him under arrest. In light of the circumstances under which the officer observed the appellant—the time of day, the location, what the appellant was doing, how he was doing it, his actions upon being observed of proceeding into a vestibule of a commercial building, the price tag on the baby carriage, the miscellaneous variety of articles within the carriage, his completely unsatisfactory explanation of his presence and his possession of the articles—to say that those circumstances, observed by the officer, were not sufficient to warrant a prudent man in believing that the appellant was carrying away the personal goods of another, and thus, at the time, committing the misdemeanor of petit larceny in the presence of the officer, is completely unjustified. I do not see how a prudent and reasonably cautious man could believe other than that the appel-

lant was a thief caught *flagrante delicto*. I cannot find the actions of the appellant so "consistent with innocent travel on a public thoroughfare" as to preclude this belief. I think it immaterial that the officer was not aware, at the time of the arrest, that the baby carriage and its contents had in fact been stolen from the church shortly before. Of course, that the property was in fact stolen would have to be proved to establish the *corpus delicti* on the issue of innocence or guilt but the issue here is not innocence or guilt but probable cause for the arrest. Probable cause need not be sufficient to justify a conviction. As asportation of stolen goods is a necessary element of larceny, it is clear that the officer had reason to believe that the misdemeanor was being committed in his presence. To attain this belief it is not required that he actually see the initial taking; seeing the carrying away, proscribed by the statute, was sufficient. In assessing the validity of the arrest under the rule, the essential ingredient is that probable cause existed within the knowledge of the arresting officer, and not that he necessarily construed that knowledge correctly. Nor is the offense of which the arrestee is subsequently charged or convicted controlling. *Simms v. State*, 4 Md. App. 160, 167. The majority make the bald assertion that no misdemeanor was committed in the presence of the arresting officer and brush aside consideration of the asportation of the property as resting on "the same unsupportable inference" which they rejected as to receiving stolen goods. I do not agree. The elements required of receiving stolen goods—that they were stolen by some one else and received by the accused both with knowledge that they had been stolen and with fraudulent intent, are not elements of petit larceny; the accused cannot be at the same time both the thief and the receiver. *Fletcher v. State*, 231 Md. 190.

As the majority state, the line between probability and suspicion must be drawn on a case by case basis and where it will be drawn can only be determined after a careful analysis of the facts and circumstances of each case. I have no difficulty in this case upon such analysis in determining where the line should be drawn. The application of the facts here to the rules of law relied on by the majority leads me to the unescapable conclusion that the arrest of the appellant was valid. Therefore the

search was reasonable and evidence seized thereby was properly admissible.

As I find no merit in the other two contentions presented on appeal by the appellant, I would affirm the judgment.

Judge Anderson has authorized me to state that he joins in this dissent.