## BURVLE E. RAMSEY v. STATE OF MARYLAND

[No. 99, September Term, 1968.]

564

*Decided December 27, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert Allen Sapero* for appellant.

*H. Edgar Lentz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred K. Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

The appellant was found guilty of assault, carrying a concealed weapon and of being a rogue and vagabond on December 1, 1967 before Judge Edwin J. Wolf, without a jury, in the Criminal Court of Baltimore. He was sentenced to five years for the assault conviction, three years for the concealed weapon conviction, and two years for the rogue and vagabond conviction, all to run concurrently under the jurisdiction of the Department of Correction. On this appeal he contends that (1) he was illegally arrested and searched, and (2) that the evidence was insufficient to support his conviction for assault and for being a rogue and vagabond.

The evidence adduced at the trial showed that Joseph Aiker was in Bechelli's Bar in Baltimore City on September 2, 1967 at approximately 11:30 a.m. when, while playing the pinball machine, he was suddenly and without warning shot in the side.

Aiker testified that he had known the appellant casually for about three or four months prior to the incident, and that the only conversation he had with him on the day of the shooting was to say "hi" when he first entered the premises fifteen or twenty minutes before he was shot.

George Bryant, a bartender at Bechelli's Bar, testified that the appellant entered the premises at about 6:30 a.m. and checked a black pistol having a white handle with him; that he

wrapped the pistol in a towel and deposited it in a drawer behind the bar; that the bar was full of customers when Aiker came in; that soon thereafter the appellant said he was going home and asked for the return of his gun; that a short time after he returned the gun to the appellant, he heard a sound resembling a firecracker explosion and saw Aiker lying on the floor. Bryant testified that he did not observe the appellant after he had returned the gun to him. He was unable to identify State's Exhibit No. 1 as the gun he checked for the appellant, although he stated it was similar in appearance.

Benjamin Bates, a patron of the bar, testified that he was present when the shooting occurred; that just prior thereto he had observed the appellant go behind the bar and say to the bartender, "Give it to me now"; and that he saw the bartender pass to the appellant "a little bit of something white, like it might be the handle of something." Bates testified that through a glass mirror he saw the appellant raise his left arm, bent at the elbow, and place his right hand on top of his left arm; and that he then heard appellant utter what sounded like "hi", followed by a "bang." Thereafter, he noticed Aiker lying on the floor and that the appellant had gone. At no time did Bates see the appellant with a gun in his hand.

Officer William Delahanty testified that at 7:05 p.m. on the day of the shooting, he investigated the crime, having "received a call to Bechelli's Restaurant, man wanted for questioning in the above offense was in the bar"; that the description he had of the man was that he was white, twenty-eight, about 145 lbs., dark hair, wearing a red coat and green tie, brown pants, and that he was known as Bob; that he then spoke to the owner of the bar, as a result of which he then spoke to the appellant who was seated in the tavern; that appellant admitted, in response to questions, that his name was Bob and that he was in the bar "at the time of the offense"; that appellant was requested and agreed to come to police headquarters "to tell us about it"; and that as they were leaving the bar, the officer noticed that appellant appeared to be under the influence of alcohol or drugs and that he staggered. Delahanty was unable to recall the clothing worn by the appellant when he approached him on the night of his arrest, other than to state that he had

a "jacket" on when he was arrested. The officer testified, however, that he thought appellant was "the subject we were looking for"; that "we were looking for a particular description," and that having observed the appellant in the light, "in my mind this was the man we were looking for." As Delahanty and appellant emerged from the tavern, Delahanty noticed that there was "a bulge" at appellant's waistline which "appeared to be the butt of a gun"; and that as he was trained "for the bulge," he "reached in and removed" a gun from appellant's waistline; that the gun had five bullets in it and one spent shell; and that the appellant was then placed under arrest and advised of his rights under *Miranda v. Arizona,* 384 U. S. 436. Delahanty identified the gun taken from appellant and it was received in evidence as State's Exhibit No. 1. As the bullet was never recovered from Aiker's body, no ballistics examination was made.

John Conner, a witness for the appellant, testified that on the night appellant was arrested by police, he was dressed in a sport shirt and "trousers." The appellant did not testify.

I

Appellant contends that as the arrest was unlawful the ensuing search of his person and seizure of the gun from him was likewise illegal so that the introduction of the gun in evidence over his objection constituted reversible error.

As we recently pointed out in *Robinson v. State,* 4 Md. App. 515, 522, a warrantless arrest by a police officer is valid where he has probable cause to believe at the time of the arrest that a felony had been committed and that the person arrested has committed it. Where the offense is a misdemeanor the rule is that a warrantless arrest by a police officer is valid where he has probable cause to believe that a misdemeanor has been or is being committed *in his presence or view,* and that the arrestee is the misdemeanant. See *Salmon v. State,* 2 Md. App. 513, 522.

The record before us discloses that the arresting officer went to the bar some seven hours after the shooting to question a man in connection with the shooting. While he had a description of the person he wanted to question, and information that his name was Bob, there is nothing in the record to show that the officer had probable cause to believe that that person was

himself suspected of committing the crime. As the evidence indicates only that the officer wished to question the appellant in connection with the shooting, we hold that appellant's arrest cannot be justified on the basis that the officer had probable cause to believe that appellant had committed a felony.

We think it clear from the record, however, that appellant was not placed in an arrest status simply because the officer approached him in the bar, sought his identity, and asked whether he was present at the time the crime was committed. Nor can we find from the evidence before us that appellant's agreement to accompany the officer to police headquarters was other than entirely voluntary on his part, and not in submission to police authority. It is clearly to be gleaned from the evidence that as the two men were emerging from the tavern the officer observed a bulge at appellant's waistline which appeared to him, in light of his police training, to be the butt of a gun. We are unwilling to conclude on the record before us that Officer Delahanty's uncontradicted testimony as to these observations was not credible. Carrying a concealed weapon being a misdemeanor for which an arrest without warrant may be made if committed in the officer's presence, *Crosby v. State,* 2 Md. App. 578, we hold that the arrest of the appellant and search and seizure of the gun from his person, occurring substantially simultaneously were lawful. In so concluding, we are mindful of the fact that in determining whether a misdemeanor has been committed in the "presence" of the officer, the term "presence" denotes that the commission of a misdemeanor is perceptible to the officer's senses, whether they be visual, auditory, or olfactory. As stated in *Davids v. State,* 208 Md. 377, a crime is committed in the presence of an officer where his senses afford him knowledge that such is the fact; and that where some evidence of a commission of a misdemeanor reaches an officer through his senses, and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, the officer may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed in his presence. While we think the evidence before us, considered in light of all the circumstances, satisfies

this test, we do not hold that every suspicious bulge observed by a police officer will support an arrest for carrying a concealed weapon. See *Capparella v. State,* 235 Md. 204. In view of our holding, we need not consider the applicability to the facts of this case of the so-called "stop and frisk" cases decided by the Supreme Court of the United States on June 10, 1968, *i. e., Terry v. Ohio,* 392 U. S. 1; *Sibron v. New York,* 392 U. S. 40; *Peters v. New York,* 392 U. S. 40.

## II

We find no merit in appellant's contention that the evidence was insufficient to convict him of common-law assault. It is true that the evidence adduced against appellant in proof of the assault charge was largely circumstantial, there being no witness who actually saw appellant, gun in hand, fire the shot into Aiker's body. While we do not think that the evidence was solely circumstantial, as claimed by the appellant, even were we to assume that it was, we think the lower court could have properly found from the evidence that the circumstances, taken together, were inconsistent with or such as to exclude every *reasonable* hypothesis or theory of innocence—this being the evidentiary yardstick by which the legal sufficiency of the evidence is to be measured where proof of guilt is based *solely* on circumstantial evidence. As we pointed out in *Nichols v. State,* 5 Md. App. 340, circumstantial evidence need not be such that no possible theory other than guilt can stand; it need not be necessary that the circumstantial evidence exclude every possibility of the defendant's innocence, or produce an absolute certainty in the mind of the trier of facts. The evidence of appellant's possession of a revolver at the precise time and place of the shooting, coupled with the fact that immediately prior to the shooting he was observed in a stance customarily assumed by persons desiring accuracy in firing revolvers, constitute circumstances which, when coupled with the further fact that on the same day as the shooting he was apprehended having a revolver on his person from which one shot had been fired, lead us to conclude that the lower court's judgment finding appellant guilty of assault was not clearly erroneous. See Maryland Rule 1086.

570

### III

Appellant finally contends that the evidence was insufficient to convict him of being a rogue and vagabond under Section 490 of Article 27 of the Maryland Code. That Section, insofar as pertinent, provides as follows:

> "If any person shall be apprehended having upon him any * * * pistol * * * at places and under circumstances from which may be presumed an intent feloniously to assault any person, * * * every such person shall be deemed a rogue and vagabond * * *."

The thrust of appellant's argument is that no evidence was adduced from which it could be rationally concluded that he possessed the criminal intent required by the statute for conviction. The record discloses that the basis for the conviction was appellant's apprehension, some seven hours after the shooting, with a gun in his possession. We think it readily apparent that the requisite intent may not be presumed solely by proof that he had the gun upon him. The statute requires an evidentiary showing that the gun was in the possession of the accused "at places and under circumstances" permitting a presumption that the accused intended to assault someone with it. While it is true that there was evidence showing the probability that the gun had been used in an assault seven hours prior to appellant's apprehension, thus indicating some general propensity to use the weapon to assault persons, we do not think, on the record before us, that the evidence, or rational inferences properly drawable therefrom, sufficiently showed that appellant's possession of the gun under the existing circumstances carried with it the intent required for conviction under the statute. Compare *Streeter v. State,* 5 Md. App. 435.

> *Judgments affirmed as to the second count (assault) of indictment 5049 and the first count (carrying a concealed weapon) of indictment 5050; judgment reversed as to the second count (rogue and vagabond) of indictment 5050 and case remanded for a new trial.*