## WILBUR ALLEN JOHNSON *v.* STATE OF MARYLAND

[No. 120, September Term, 1969.]

*Decided November 24, 1969.*

188

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*John D. Hackett* (*Donald Daneman* on the brief) for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Josef E. Rosenblatt, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant Wilbur Allen Johnson was convicted of possession of narcotics and possession of an unconventional lottery slip by the court sitting without a jury and sentenced to five years imprisonment for the narcotics charge and six months imprisonment for the lottery charge, the sentences to be concurrent and to run consecutive to a ten-year sentence received in another case. On this appeal appellant claims that he was illegally arrested and that, consequently, the narcotics seized from his person at that time should not have been admitted into evidence because the search was not incident to a lawful arrest, nor was it a proper frisk for weapons.

At approximately 1:30 p.m. on February 6, 1968, Detective Milton Spencer, a plainclothes member of the Vice Squad with nine years experience in lottery operations, entered Max's Pool Room in Baltimore to make a "routine inspection." Spencer testified that "I walked in and walked around the back part of the poolroom there. I noticed the defendant here * * * bending over the rear pool table writing on this brown paper bag." Spencer further testified that appellant "was writing numerals 960, 069, 906 and then 609. At this time he realized I was looking at this paper. He had just started to make a small dash behind the first zero of the first number, and, 960, when he saw me he started to draw a line through the 96. At this time I identified myself as a police officer, took this bag from him, and told him

that I believed this was a non-conventional lottery slip that he was making, and that he was under arrest. * * *" The following colloquy then occurred:

"Q. [State's Attorney] * * * Now, in your opinion, as an expert in lottery what do those numbers, which you have read out to the court, as written on that brown paper bag, represent?

A. [Detective Spencer] It appears he was combinating 960, and, he had done it in its five phases. And, there is one more he could have written; and, of course, I stopped him and went back to the top this time."

No other numbers were found on the bag. On cross-examination, Detective Spencer testified with reference to the appellant that "I have seen him around, and until this occurred I did not know his name"; that appellant was standing in the poolroom by himself; and that after he arrested appellant, he searched his right coat pocket and found fifty gelatin capsules of cocaine hydrochloride, seventy-one gelatin capsules containing heroin hydrochloride, and $201 in cash. Appellant was then taken to police headquarters where he was examined and found to have "needle and track marks on both arms too numerous to count." At that time appellant admitted to a daily dose of 60 to 70 capsules of narcotics.

Testifying on his own behalf, appellant admitted that he had been using drugs for twenty-five years but claimed that he was not an addict. He stated that he was a gambler, that he had not worked in the last three years, and that he was familiar with lottery numbers. He claimed that he picked up the bag from the poolroom floor to write down a telephone number; that "there was four telephones around the wall, and I was going to call somebody back later"; that he couldn't remember seeing the numbers on the bag; that he was in the process of tearing the bag to write the number down when he was approached by Detective Spencer; that "everybody knows

that I don't write no numbers"; and that "[i]f I was going to play like the officer made a statement about 960 combination, why would I put five numbers down and put the whole six, wouldn't have to; give it to a number writer and just say, give me 96 for a combination."

It is, of course, elementary that a warrantless arrest is valid where the arresting police officer has probable cause to believe that a misdemeanor has been or is being committed in his presence and that the arrestee is the misdemeanant. *Winebrenner v. State*, 6 Md. App. 440; *Robinson v. State*, 4 Md. App. 515; *Salmon v. State*, 2 Md. App. 513. In determining whether a misdemeanor has been committed in the officer's presence the term "presence" denotes that the commission of the misdemeanor is perceptible to the officer's senses, whether they be visual, auditory, or olfactory. *Davids v. State*, 208 Md. 377; *Ramsey v. State*, 5 Md. App. 563. And in determining whether probable cause exists to justify the arrest, "only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, 645. More specifically, the rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify a conviction, but more evidence than would arouse a mere suspicion. *Edwardsen v. State*, 243 Md. 131; *Radcliffe v. State*, 6 Md. App. 285; *Cornish v. State*, 6 Md. App. 167; *Simms v. State*, 4 Md. App. 160.

We think it clear that Detective Spencer had probable cause at the time he arrested appellant to believe that he was committing a misdemeanor in his presence or view, *viz.*, that he was writing and in possession of a non-conventional lottery slip or record in violation of Maryland Code, Article 27, Section 362. Spencer was an experienced Vice Squad detective familiar with illicit lottery operations. The expertise of the arresting officer in lottery cases is an important factor in assessing the ex-

istence of probable cause. *Spriggs v. State*, 226 Md. 50; *LeFaivre v. State*, 208 Md. 52; *Chernock v. State*, 203 Md. 147. Spencer's observations were made in a poolroom in a depressed neighborhood—a typical place where lottery slips are often made and exchanged. Appellant was standing near a bank of phones useful in the transmission of lottery information. Most importantly, Spencer actually observed appellant writing a sequence of three-digit numbers of the kind used in conventional lottery operations on a brown paper bag in such an order as appeared to represent the various combinations of a single three-digit number. It is well known that such combinations represent a particular way of betting a three-digit number such that the occurrence of any of these combinations as the day's "number" renders the player of that combination the winner of a sum of money. The probability of criminal activity being the measure of probable cause, *Spinelli v. United States, supra,* Detective Spencer could have reasonably believed that appellant was a numbers writer or runner who, after receiving a request from a player to "combinate 960," wrote out the possible combinations to avoid missing a "hit," *i.e.,* the play of a winning number on which payment would have to be made. In any event, as a prohibited lottery slip includes, in our opinion, any writing of such three-digit numbers on any piece of paper, including, as here, a paper bag, where the purpose is to use it in an illicit lottery, we find on the facts and circumstances of this case that the arrest was lawful.

Appellant's arrest being legal, Detective Spencer was authorized to conduct incident thereto a search of appellant's person for evidence of the crime and for weapons. *Boddie v. State*, 6 Md. App. 523; *Harris v. State,* 6 Md. App. 7. When, in the lawful course of that search, Spencer discovered the cache of narcotics in appellant's pocket, he was entitled to seize them, it being well settled that if the circumstances make an arrest lawful for one crime, there may be a reasonable seizure of items in the possession of the arrestee, and a conse-

quent right to use the items so seized as evidence to convict for a crime different from that which justified the arrest. See *Gamble v. State,* 2 Md. App. 271, and cases cited at page 276.

*Judgments affirmed.*