# DAVID ALLEN WIEBKING, WILLIAM ANCEL HOLT AND CLIFFORD LYNN WOLF v. STATE OF MARYLAND

[No. 51, September Term, 1973.]

*Decided October 26, 1973.*

The cause was argued before ORTH, C. J., and THOMPSON, MENCHINE and MOORE, JJ.

*Robert C. Heeney* for appellants.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard J. Kinlein, State's Attorney for Howard County,* and *Timothy E. Welsh, Deputy State's Attorney for Howard County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 14 September 1972 DAVID ALLEN WIEBKING (indictment 5466), WILLIAM ANCEL HOLT (indictment 5468), CLIFFORD LYNN WOLF (indictment 5469), Angus Roy Gross, III (indictment 5467), and Paul Craig Buckley (indictment 5470) were jointly tried at a bench trial in the Circuit Court for Howard County. Each indictment alleged the commission on 21 December 1971 of the crimes of possession of cocaine (1st count), possession of marijuana "in a sufficient quantity to reasonably indicate an intent to distribute" (2nd count), and possession of marijuana (3rd count). Each of the defendants were found guilty under the 1st and 2nd counts. Wiebking, Holt and Wolf were each fined $250 and costs and sentenced to 2 years. The prison sentences were suspended and each was placed on probation under designated conditions provided the fine and costs were paid within 90 days.[1] Attacking the judgments on appeal, their questions go only to the propriety of the denial by the lower court of their motion to suppress the evidence.

When the indictments came on for trial, the five defendants moved to suppress the tangible evidence in the hands of the State on the ground it was obtained by an

---

[1] The record before us does not show the sentences given Gross and Buckley. They did not join in this appeal.

unreasonable search and seizure. The court decided to determine the motion as a preliminary matter. Maryland Rule 729 d 2.

The defense called Gross on the issue. He testified that he and the other four defendants were arrested on 21 December 1971 by an Officer Reid. They were in a truck on a farm where Gross was then living, renting a room in the farm house. Reid did not have a search warrant. Reid asked if he could search the truck and Gross told him he could not do so without a warrant; no one else gave permission to the police to search the truck; Reid searched it. Neither Gross nor any of the defendants gave Reid permission to come on the farm property.

On cross-examination it was brought out that the farm was the River Hill Game Farm near Clarksville in Howard County. The farm consisted of open fields, "many blocks from the main road" and there were no other homes "for a quarter of a mile * * * around." About 5 or 6 p.m. Gross and the other defendants were in a van type truck driven by Wolf, parked in an open field about a quarter of a block from Route 32, the nearest road. It was dark. They had been there about a half an hour. The lights of an approaching car shone on the truck. It was a marked police car and a police officer in uniform got out and walked toward the truck. Gross and Wolf went to meet him to find out "what the problem was, because we didn't expect anyone to come up on us." The officer "said that he had a * * * suspicious vehicle report from a neighbor across the street, and he wanted to search the truck, he wanted to look in it, look in the truck." Gross was not sure whether the officer asked what they were doing there. Holt, Buckley, Wiebking and Wolf did not live on the farm; they were Gross's guests, visiting him at the farm for the night, on their way, he believed, from a job site out of state. Gross thought that Reid asked whose truck it was and Wolf said it was his. Although they told Reid he could not open the door to the truck, Reid opened it. Gross could not recall whether Reid said anything about smoke being in the truck. There was smoke in the truck. At the time the officer

opened the door all the defendants had gotten out of the truck.

It was elicited upon inquiry by the court that the farm house was about 100 yards from the parked truck. There was a dirt road through the field but the truck was on the grass about 100 feet off the road. It was a quarter of a mile from Route 32. A dome light in the truck was on when the officer approached.

Officer Howard Reid of the Howard County Police Department was called by the State. He said he had arrested the defendants on 21 December 1971. He recounted the circumstances:

"We had received a complaint, the police department had received a complaint, of a suspicious vehicle in the field across from this complainant's house — I don't know the complainant's name offhand — and there were, had been numerous activities in the area, and she had called to complain of this truck. I went to the location, and upon searching the field I observed a tan panel truck parked in the field with the inside light of the truck on. The tag number of the truck was a D. C. registration, I'm not sure offhand what the registration was. As I approached the vehicle, two subjects got out of the front of the vehicle, one, I believe, was Mr. Holt, and the other, I'm not sure. I know that two of them that were inside the truck were Mr. Wiebking and Mr. Buckley; two got out of the truck, there were five altogether. They asked me what I wanted and I asked them what they were doing in the field. At this time, I looked at the truck and there was, it appeared to be a tremendous amount of smoke inside the truck. I asked Mr. Holt if it was all right if I opened the door. Permission was gained from Mr. Holt and I opened the door at which time I smelled what, to me, was a large quantity of marijuana smoke. Looking inside the truck I observed three subjects sitting in the

230

> middle, in the back of the truck. And, laying in the middle of where they were sitting was a bag, which, of green vegetable matter, which to me was known to be marijuana. At this time, I asked the three subjects to remove themselves from the truck; at which time, they were placed under arrest. At this time, a search of the truck was conducted by myself and officer Monroe, at which time, at least seven, one ounce bags of marijuana was located in the truck; a small amount of hashish and a small amount of cocaine."

When he drove up to the truck there was a light on inside it. He could see the light through the rear windows of the truck and observed the smoke.

On cross-examination Reid was asked if he had permission "to go onto that land." He said:

> "The people who own that property work indirectly with the police department, there were numerous children at the time who were living on the farm, from the owner of the property, — I don't know his exact name — we have permission at any time to enter onto that property.
>
> * * *
>
> I know him indirectly, I've met him but I don't know his name.
>
> * * *
>
> I didn't have permission that night but I had general permission to enter on that property."

The man who gave the officer permission to enter on the land was, to Reid's knowledge, "in charge of the farm, he lived in the house, he was in charge of the house. Now whether he actually owned it or he rented it, I really don't know." Reid had been told by the man that he was the proprietor "on a couple of occasions" when the officer had been to the farm concerning children who had run away from the farm. The officer said that Wolf was the owner of the truck. Reid repeated that he asked permission of Holt to

open the back of the truck. Questioned as to what Holt said Reid testified: "All he said was, 'Yes, go ahead and open the truck.' I asked the question and he just answered with the reply of, 'Yes, go ahead.' "

On inquiry by the court Reid said he learned after the search that Wolf was the owner of the truck. He directed his request to open the truck door to Holt because Holt "had gotten out of the truck on the driver's side and had come back towards me. At this time, I really, cannot say I knew who the owner of the truck was. I imagined that he had been since his, the position in which he had been sitting. * * * I asked him if it was okay to open the truck, to open the door, at which time he replied, 'Yes, go ahead.' " No one else in the group said anything to the contrary. Reid first observed the light in the truck when he was about 150 yards away.

Wolf testified in rebuttal. He said he was the owner of the truck. He so told Reid in answer to an inquiry by Reid and asserted that Reid then asked him if he would give permission to search the truck. "And I said 'Do you have a search warrant?' And he goes 'Are you going to make me go through all of that?' That's the exact words he said. And I said 'Yes'. And he said 'Well, I believe I have sufficient cause to search it anyway.' * * * And he went in and searched it." [2]

Gross testified in rebuttal. He said the only other persons occupying the premises in which he rented an apartment were a man named Jackson, a girl and a woman. None of them owned the place — "they were tenants like myself." They were not "in charge of the premises." On inquiry by the court, however, he said that he paid rent to a manager of the farm who "lived off the farm, I believe", and whose name was Jim Jackson. The transcript reads:

> COURT: "Jackson, that's the Jackson you previously mentioned.
> A: Yes."

---

**2.** After the cross-examination of Wolf the transcript at that point appears incomplete. There is transcribed a cross-examination of Holt but there is no transcription of a direct examination of him. On cross-examination he said Reid asked permission of Wolf to open the truck door.

The others living there rented from the same man.

The judge below denied the motion to suppress the contraband seized. In so doing he explicitly disregarded whether the search was consensual.[3] He found that the police had received a report of a "suspicious vehicle", that they found a van type vehicle parked in an open field after dark, and that they saw, through the windows of the vehicle by a light therein, that it was full of smoke. He thought that this was more than mere suspicion, but that it did not amount to sufficient probable cause to justify the issuance of a search warrant.[4] He specifically found that the search could not be justified as incident to a valid arrest.[5] Determining that the search was valid, he explained:

> "I'm simply basing it on the fact the officer received a report of a suspicious vehicle, it's true it's undescribed, but that when he got to where he found the vehicle, what he saw, what he observed, in my opinion, based on the slight bit of testimony he gave as to his own experience in similar matters, it gave rise to probable cause to believe that there was illegal, some illegal activity being carried on or conducted and some illegal material contained within that van. I think, under those circumstances, his warrantless arrest [sic] was not unreasonable; I think it was based on probable cause, and I think he had it. The motion is overruled."[6]

3. He said: "Well, frankly, I don't think that in a case of this type, consent to any search was necessary, even assuming the truth of the testimony I've heard and recognizing the conflicts which may be due to faulty recollections on the part of those testifying."

4. He said: "True, I don't believe, and I agree with Mr. Emery [defense counsel], that if an affidavit on the, with those bare facts, for the issuance of a search warrant was applied, I doubt that the search warrant would issue."

5. He said: "There's no, no question involved in this case as a search incident to an arrest; the search here preceded the arrest."

6. The judge observed: "Incidentally, I read during the recess the Johnson case, and that's basically * * * why I decided the motion as I did." It is not clear to what Johnson case the judge referred. The Deputy State's Attorney in argument on the issue quoted from Johnson v. State, 8 Md. App. 187. At 191 it set out a summation of the rule for a valid warrantless arrest:

> "It is, of course, elementary that a warrantless arrest is valid

We can only conclude that the judge found that the search was not constitutionally proscribed because it was reasonable as based upon probable cause.

When a constitutionally protected right is involved, it is our duty in determining whether the court below made its decision within the required constitutional framework to apply the rule that "[w]hen constitutional rights turn on the resolution of a factual dispute we are duty bound to make an independent examination of the evidence in the record." *Brookhart v. Janis*, 384 U. S. 1, note 4 at p. 4; *Cox v. Louisiana*, 379 U. S. 536, 545, n. 8; *Herbert v. State*, 10 Md. App. 279, 287; *Gardner v. State*, 10 Md. App. 233, 245. In doing so, we accord "an appropriate and substantial effect to [the trial court's] resolutions of conflicts in evidence as to the occurrence or nonoccurrence of factual events and happenings." *Haynes v. Washington*, 373 U. S. 503, 516. What we mean, therefore, when we say we have the obligation to make an independent, reflective constitutional judgment on the facts whenever a claim of a constitutionally

---

where the arresting police officer has probable cause to believe that a misdemeanor has been or is being committed in his presence and that the arrestee is the misdemeanant. *Winebrenner v. State*, 6 Md. App. 440; *Robinson v. State*, 4 Md. App. 515; *Salmon v. State*, 2 Md. App. 513. In determining whether a misdemeanor has been committed in the officer's presence the term 'presence' denotes that the commission of the misdemeanor is perceptible to the officer's senses, whether they be visual, auditory, or olfactory. *Davids v. State*, 208 Md. 377; *Ramsey v. State*, 5 Md. App. 563. And in determining whether probable cause exists to justify the arrest, 'only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, 645. More specifically, the rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify a conviction, but more evidence than would arouse a mere suspicion. *Edwardsen v. State*, 243 Md. 131; *Radcliffe v. State*, 6 Md. App. 285; *Cornish v. State*, 6 Md. App. 167; *Simms v. State*, 4 Md. App. 160."

*Johnson v. State*, 9 Md. App. 166, however, at 187, in discussing the right to search an automobile, stated that such right and "* * * the validity of a seizure therefrom are not necessarily dependent upon an arrest or a search warrant. It is well settled that an automobile, unlike a dwelling or a person, may be searched without a warrant where there is probable cause to believe that the auto harbors the instrumentality of a crime or evidence pertaining to a crime." In light of the finding below that the search was not incident to an arrest, it seems likely that it was the latter case on which the judge relied.

protected right is involved is that, although we give great weight to the findings of the hearing judge as to specific facts, we make our own independent judgment as to what to make of those facts. In making that judgment we resolve for ourselves the ultimate fact concerning constitutionality, for example, the existence or nonexistence of voluntariness of a confession or the probable cause *vel non* with respect to a search and seizure. *Walker v. State*, 12 Md. App. 684, 691-695.

The factual findings of the hearing court here were sparse. They consisted of a finding that the police had received a report of a "suspicious vehicle", and saw a van type vehicle, full of smoke, parked in an open field after dark. The court did not resolve the conflicts in the testimony as to who was in the vehicle when they approached it and who left it and when, or who, if anyone, Reid asked was the owner of the truck and whether he ascertained the true owner before or after the search, or who was in charge of the farm premises, or whether Reid had valid permission to enter on the farm land, or who, if anyone, gave consent to search.

We have set out and interpreted and construed and applied the definition of "probable cause" in a myriad of cases. See *Cuffia v. State*, 14 Md. App. 521. There is no need to discuss it again. Giving the required weight to the factual findings of the hearing judge, it is our independent, reflective constitutional judgment on the facts that there was not sufficient probable cause to authorize a warrantless search.[7]

---

7. The question of probable cause *vel non* is not succinctly put by appellants. They present two questions:

(1) "Can a police officer lawfully search a vehicle on private property when there was no legal justification for the officer to enter the property?"

(2) "If the police officer's entry upon private property can be excused, can his search of the motor vehicle be lawful when the owner of same refuses permission to search?"

As we above noted, the court below made no finding as to (1) whether the police had permission to enter on the farm and as to (2) whether the search was upon consent.

We think, however, that the issue of probable cause, upon which the holding of the court below was predicated, is implicit in appellants' argument and that its resolution is determinative of this appeal.

We observe that the court below believed that there was not sufficient cause to justify the issuance of a search warrant. Its determination that there was sufficient probable cause to justify a warrantless search is inconsistent with this belief. We adopt the position that the standard of probable cause for warrant and warrantless searches is indistinguishable, there being no real difference between the quantum of proof required for a search warrant or a search without a warrant. In *Collins v. State*, 17 Md. App. 376, n. 2 at 381, we said:

> "The same quantum of probable cause is required for a warrantless arrest, an arrest warrant, and a search warrant. The standards applicable to the factual basis supporting an arresting officer's probable cause assessment at the time of a warrantless arrest and search incident are at least as stringent as the standards applied with respect to an issuing official's assessment upon the issuance of an arrest warrant or a search warrant. *United States v. Ventresca, supra; Aguilar v. Texas, supra; Jones v. United States, supra.* See *McCray v. Illinois*, 386 U. S. 300; *Dawson v. State*, 11 Md. App. 694, 697, n. 1."

In *Jones v. United States*, 362 U. S. 257, 270, the Court said, in determining that hearsay may be the basis for a warrant:

> "If evidence of a more judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant must be presented when a warrant is sought, warrants could seldom legitimatize police conduct, and resort to them would ultimately be discouraged."

In *Aguilar v. Texas*, 378 U. S. 108, "the *Jones* decision was metamorphized to mean that warrantless searches required a higher standard of probable cause than searches pursuant to a warrant." Cook, *Constitutional Rights of the Accused* (1972), 243. The language above quoted from *Jones* was distorted to read, at 111:

> "Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant'."

Again in *United States v. Ventresca*, 380 U. S. 102, the Court observed, at 109, citing *Jones*, that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." In *Hignut v. State*, 17 Md. App. 399, we called attention to the language of *Aguilar* and *Ventresca* in this respect and noted, at 409:

> "The definition of 'probable cause' remains a constant, of course, applying alike to searches and to arrests, with warrants or without warrants. The 'preference' is rather a rule of construction for the resolution of 'doubtful or marginal cases'."

Thus we do not construe *Jones*, *Aguilar* and *Ventresca* as acknowledging the existence of two constitutional standards of probable cause — one where a warrant is employed, another where it is not. We note that in any event, the decisions provide no guide as to distinction between two standards.[8] Thus if the judge below was correct in his belief that there was insufficient probable cause to justify the issuance of a search warrant, and we think he was, he was therefore incorrect in finding there was sufficient probable cause for a warrantless search. Even if this were a doubtful or marginal case, the preference to be given as a rule of construction runs to the search under authority of a warrant, not to the warrantless search.

---

8. The Supreme Court has recognized several unique situations in which a warrant is a prerequisite to a governmental intrusion. For example, electronic eavesdropping, see *Osborn v. United States*, 385 U. S. 323, *Berger v. New York*, 388 U. S. 41, and *Katz v. United States*, 389 U. S. 347, with the possible exception of misplaced confidence cases, see *Hoffa v. United States*, 385 U. S. 293 and *United States v. White*, 401 U. S. 745. It appears that a warrant is now required also in certain administrative searches. *Camara v. Municipal Court of San Francisco*, 387 U. S. 523 and *See v. Seattle*, 387 U. S. 541, rejecting certain holdings in *Frank v. Maryland*, 359 U. S. 360.

On our independent constitutional appraisal of the evidence here adduced we cannot say that Reid and the police team had facts within their knowledge that gave probable cause to believe that a crime had been or was being committed and that contraband or evidence thereof was within the vehicle. We think that on such facts a prudent and cautious man would not be justified in believing otherwise. We are constrained to conclude that there was no more than suspicion of the commission of crime and the possibility of the presence of contraband or evidence.[9] In so finding we have considered that hearsay information, even from an unidentified informant, may contribute to the knowledge of the police. *Buckner v. State*, 11 Md. App. 55, 61. But here the report to the police is given as the bare statement that a complaint had been received "of a suspicious vehicle in the field across from the complainant's house." This was explained only by Reid's testimony that there "had been numerous activities in the area, and she had called to complain of this truck." There was no explanation of the "activities"[10] and no facts were set out leading to the conclusion that the vehicle was "suspicious." We have also noted that in reaching his decision the judge below mentioned that he had considered the experience of Reid in similar matters, although he remarked that the testimony Reid gave with respect to such experience was "slight." It is correct that in determining the existence *vel non* of probable cause, consideration may be given to the special significance which objects, happenings, and individuals may have conveyed to a trained, experienced and knowledgeable police officer making the search, *Henson v. State*, 236 Md. 518, 521, cited in *Buckner v. State, supra,* at 61. Here, however, we find no evidence with regard to the qualifications of Reid adduced at the hearing on the issue of probable cause except

---

**9.** We reach this conclusion assuming for the purpose of decision that the observations of the police were not gained by physical intrusion into a constitutionally protected area. See *Brown v. State*, 3 Md. App. 90. As above noted, however, the lower court made no finding whether the police were legally on the farm property.

**10.** The State attempted to elicit details regarding the "activities." Objection thereto was sustained.

that he was employed by the Howard County Police Department during December 1971 as a uniformed patrolman. He did say that when he opened the truck door he saw a bag containing "green vegetable matter, which to me was known to be marijuana." When the State later in his testimony asked if he had any special training in the field of narcotics and narcotics detection, objection was sustained, the court saying: "Yes, the testimony, more properly, should relate to his activities not his qualifications. What he did and what caused him to do what he did, that's basically what the motion is about." The evidence in the record of what Reid did up to the search of the vehicle, and what caused him to do it, is clearly insufficient to establish that he had probable cause for the search.

Regardless of the lack of probable cause for the search, it would not be constitutionally proscribed as to those bound by a voluntary consent to it. The issue of consent, however, as we have indicated, was not tried and decided below, Maryland Rule 1085, nor did the judge make such factual findings on the conflicting evidence concerning an alleged consent as would enable us to make an independent constitutional appraisal on the matter.

We hold that the court below erred in denying the motion to suppress. As the tangible evidence necessary to the convictions was improperly received, the judgments must be reversed.

Our ruling is based upon the evidence with respect to probable cause as it appears in the record before us. On remand, at a hearing on the motion to suppress, the State may be able to adduce evidence sufficient to establish probable cause for the arrests of appellants or to show that there was an effective consent to the search and seizure.

*As to each appellant: judgments reversed and case remanded for a new trial; costs to be paid by Howard County.*