## JONES *v.* STATE

[No. 57, September Term, 1965.]

*Decided March 30, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*William J. Rowan, III,* for appellant.

*Edward F. Borgerding, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Leonard T. Kardy, State's Attorney for Montgomery County,* and *James F. Tomes, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This is an appeal from a conviction of assault and battery in a non-jury trial in the Circuit Court for Montgomery County. Clifford Herman Jones, the appellant, contends that his arrest was unlawful, and, if it was, that some of the evidence used against him was illegally obtained and there was not sufficient evidence to convict him.

At the trial, Miss Dierdre Roberts testified that, as she was returning to her home in Silver Spring at about one-thirty or two o'clock in the morning of June 21, 1964, she was "jumped" from behind as she got out of her car. On her way home, she had noticed a car behind her, which turned on its bright lights every time she came to a stop sign. She screamed, struggled with her assailant, and ripped his shirt. Face to face with him, she saw that he was a Negro of slight build and that his shirt which she ripped was plaid. She broke away from him, but was hit in the eye. During the struggle, her assailant snatched her pocketbook. She had noticed that the automobile which had followed her was a small foreign sports car. At the trial, Miss Roberts identified the appellant, Jones, as her assailant; she had previously identified him in a police lineup. She also identified a plaid shirt, in a ripped condition, as the shirt her assailant was wearing at the time of the attack; when the struggle took place, there was a street light half a block away and, across the street, there were lights from apartments and a court.

Michael Hardesty and his wife were visiting on the third floor in an apartment house near the scene of the attack. He heard screams and rushed downstairs, followed by his host. He testified that he heard a small sports car going around the corner. He saw it was small, and could tell it was a sports car

by the way it sounded. He and his friend saw Miss Roberts holding her eye, then they gave chase in Hardesty's car, but the other car eluded them, and they returned to the scene of the attack. The police were there. Hardesty testified that the car he and his friend had followed "cast a shadow giving a small, compact figure, that it was more possibly a sports car than any other; along with the fact that the sports car had a distinct mushed noise. If you are acquainted with automobile sounds you may recognize it more apt than others might, but gave me the impression of a sports car, like a MG or a Triumph or something like that." He was not an expert on automobiles.

Detective Robertson of the Montgomery County Police testified that, in response to a call, he arrived at the scene shortly before 2 A.M. Miss Roberts described her assailant to the detective as "a colored male, approximately five foot eight, wearing a plaid shirt." A few feet from Miss Roberts' car, the detective found a pocketbook, with its contents scattered, and a piece of a shirt, which was put into evidence. Detective Robertson talked to Mr. Hardesty and other people at the scene, whose names he could not recall, and, from the information received, put out a lookout for "robbery. Sport—red sports convertible with a black top operated by a colored male, five foot eight, wearing a plaid shirt." The information upon which the lookout was based was received from Miss Roberts, Mr. Hardesty and "some of the witnesses." He testified there were a half a dozen people or more at the scene. The detective could not recall "exactly who gave me the description." The lookout was placed a very short time after the officer's arrival.

Officer Martin Holt heard the lookout which had been placed over the police radio. He remembered it as "for a Negro driving a small sports car red in color with a black top." The crime was described as an assault and attempted robbery. At about 2 A.M., Officer Holt stopped a car, which met the lookout description, driven by Jones, who, the officer testified, corresponded in appearance to the description of the suspect given over the lookout. Jones' car could not be moved. Jones was put in the police car and was driven to the hospital to which Miss Roberts had been taken. Officer Holt testified that when

Jones was apprehended, he was wearing a sweater, beneath which was a plaid shirt. At the hospital, it was observed that the sleeve of Jones' shirt was torn.

Expert testimony was admitted at the trial, over objection, showing that the piece of material found at the scene of the attack was torn from the plaid shirt worn by Jones, and that a palm print found on the rear bumper of Miss Roberts' automobile matched Jones' palm print, which was taken at the police station after his arrest. The question of the legality of the arrest was duly raised by Jones' counsel during the trial. The court held the arrest was legal and overruled the objections to the admissibility of the evidence secured after the arrest.

The indictment contained four counts: robbery, assault with intent to rob, assault and battery, and larceny. At the close of the State's case, a motion for a directed verdict was made on Jones' behalf as to all counts, and the motion was granted as to the first count, robbery. Jones took the stand and asserted his innocence. His motion for a directed verdict was renewed at the close of the case, and was granted as to the counts for assault with intent to rob and larceny. Jones was found guilty on the third count, assault and battery, and was sentenced to ten years in the House of Correction.

In this appeal, Jones' counsel properly concedes that there was probable cause for the arresting officer to believe that a felony had been committed. Robbery is a common law crime and a felony. *Hayes v. State,* 211 Md. 111, 113, 126 A. 2d 576 (1956) and *Hollohan v. State,* 32 Md. 399 (1870). See also Kauffman, *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 150, n. 99 (1941). From the victim's statement and her appearance, there was ample ground for the investigating officer who placed the lookout to believe a robbery had been committed; the lookout referred either to a robbery or an assault with intent to rob. The latter offense is a statutory felony. Code (1957), Art. 27, § 12. The appellant contends, however, that the arresting officer did not have probable cause to believe that Jones had committed the felony. He argues that the police lookout was not specific enough to constitute probable cause for the arrest and that in any event the officer who placed the lookout did not know who gave the information or if the persons supplying it were reasonably reliable.

The rule as to when an officer may legally arrest a person, without a warrant, has often been stated by this Court. The decisions are reviewed in *Taylor v. State,* 238 Md. 424, 430, 209 A. 2d 595 (1965). In *Farrow v. State,* 233 Md. 526, 532, 197 A. 2d 434 (1964), we said: "If the police team working on the particular case had accumulated sufficient information to furnish probable cause for a reasonable man to believe, that the alleged crime had been committed and that there was probable cause to believe that the defendant was involved therein, there was sufficient cause for his arrest." It is the sufficiency of the information which the police organization, working as a team of which the arresting officer is a part, has placed on the lookout, which is determinative. *Johnson, et al. v. State,* 238 Md. 528, 539, 209 A. 2d 765 (1965) and cases therein cited.

In this case, the descriptions of the suspected assailant and the car he was driving were both reasonably specific. A red sports convertible with a black top is a definite delineation of an unusual car, particularly if driven shortly after the incident in the general area at two o'clock in the morning. "A colored man five foot eight inches, wearing a plaid shirt" sufficiently indicates the suspected assailant, particularly when he is driving the car described. It is not conclusive that the arresting officer, testifying several months after the incident, did not remember all the specifics of the lookout which he heard. The officer who put out the lookout was clear in his recollection of what he included in the lookout, and it was on the basis of the lookout which he heard that the other officer made the arrest. That in other cases there were other reasons showing probable cause for the arrest, such as the trail of blood in *Taylor, supra,* the AAA decal on the rear of the car in *Johnson, et al. v. State, supra,* and the specified tag number in *Mercer v. State,* 237 Md. 479, 206 A. 2d 797 (1965), does not mean that any particular element of identification is essential; the test is the sufficiency of the probable cause for the arrest in the particular case. The particularity of the lookout descriptions of the car and the man in this case is in contrast with the sparsity of the description in *Young v. State,* 234 Md. 125, 198 A. 2d 91 (1964), relied on by the appellant.

It is true that the officer who put out the lookout could not

remember exactly who it was who had given him all the information. Most of the information clearly came from Miss Roberts and Hardesty, and there were other people at the scene who had presumably come from their homes on hearing Miss Roberts' screams. The test of the reliability of the information received, under circumstances such as those present when Detective Robertson came to the scene, is different from the criterion when there is time for the procuring of a search warrant. Compare *Shrout v. State,* 238 Md. 170, 208 A. 2d 585 (1965) and cases therein cited. When a crime of violence has been committed in the early morning hours, and the only chance of apprehending the suspected criminal seems to be a prompt apprehension of the car in which he was driving away, the investigating officer cannot be expected to take the time to ascertain and make notes of the names and backgrounds of all the persons at the scene who told him what they had observed. Our system of justice must be responsive, not only to the needs of individual liberty, but also to the rights of the community. *United States v. Ventresca,* 380 U. S. 102, 112 (1965).

It is also true that the arresting officer did not observe that Jones was wearing a plaid shirt under his sweater when the officer stopped the car and asked Jones where he had been. The officer did observe the shirt, however, when Jones was apprehended and before he was placed in the police car. There is not an arrest when a person is approached by a police officer and merely questioned as to his identity and actions; this amounts to no more than an accosting. *McChan v. State,* 238 Md. 149, 157, 207 A. 2d 632 (1965); *Cornish v. State,* 215 Md. 64, 58-70, 137 A. 2d 170 (1957) and authorities therein cited. "A law abiding citizen cannot have a valid objection to the inconvenience of being stopped, so long as he is accorded courteous treatment * * * Otherwise, the enforcement of law and order would be greatly hampered." *West Virginia v. Hatfield,* 112 W. Va. 424, 427, 164 S. E. 518 (1932). Even if the officer had not seen the shirt before the arrest, there was sufficient probable cause for the arrest, in view of the correspondence of the car Jones was driving and of Jones' general appearance to the lookout description.

As the arrest was lawful, the evidence as to the piece of ma-

terial torn from the shirt and the expert testimony as to the palm prints (while not necessarily infallible) was clearly admissible. In view of this evidence and Miss Roberts' identification, there can be no question of the sufficiency of the evidence to sustain the conviction.

*Judgment affirmed.*