## ABNEY *v.* STATE

[No. 458, September Term, 1965.]

*Decided November 16, 1966.*

*Motion for rehearing filed December 16, 1966, denied January 3, 1967.*

446

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*William W. Grant* and *Norman N. Yankellow,* with whom was *Joseph Rosenthal* on the brief, for the appellant.

*Carville M. Downes, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Fred A. Thayer, State's Attorney for Garrett County,* and *W. Dwight Stover, Assistant State's Attorney,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Defendant-appellant, Edwin Joe Abney, was charged on an information alleging the murder of Elmore Templeton. He was tried in the Circuit Court for Garrett County by Judges Stuart F. Hamill, Harold C. Naughton, and James E. Getty, sitting without a jury. At the close of the State's case, a motion for a directed verdict of acquittal as to each degree of felonious homicide was made and denied. At the close of the defendant's case the motion was renewed and was granted by the court as to murder in the first degree, but denied as to murder in the second degree and manslaughter. The court found the defendant guilty of murder in the second degree and sentenced him to serve a term of 15 years in the Maryland Penitentiary. From errors allegedly committed by the court, the defendant has appealed.

On the night of August 13, 1965, one Elmore Templeton was shot and killed in Friendsville, Garrett County, Maryland. Templeton was struck by a bullet which was discharged from a gun in the hands of the defendant, Edwin Joe Abney, who was a "pipeliner." Pipeliners were employees of a natural gas pipeline construction firm which was doing work in the area, and were generally from other areas. Abney's role in the events immediately preceding the fatal shooting had been that of an al-

leged peacemaker, and, in fact, he had taken the death weapon from one of the two participants in a fist fight taking place in the street, which was the focus of attention of all of the people at the scene. Abney's statement to the police and his testimony at the trial were that it was his intention to fire the weapon into the air in order to distract the fighters and to break up the fight; that he was unfamiliar with the defective gun; and that it went off accidentally. Templeton was not a participant in the fight nor had he been in the bar in which the altercation had its origin. He was walking toward the fighters when the gun went off.

Although various witnesses testified that they had heard as many as four shots being fired, the weapon, upon examination, revealed that two shots had actually been fired, only one of which struck Templeton in the left shoulder blade, piercing his lung and causing his death. The witnesses produced by the State gave various versions of the happenings immediately prior to the shooting and of the actions of the decedent subsequent to the shooting. There was some testimony to the effect that the defendant had previously threatened that he would shoot any one who tried to break up the fight.

Abney testified that he had consumed a large quantity of alcohol on the day of the shooting; that he had taken various medications; and that he had consumed little food on that day. It was further shown that he had been for some time prior to the incident an epileptic.

Since this case was tried by the lower court sitting without a jury, this Court may "review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." Maryland Rule 886 a. This Court does not determine whether the defendant was guilty beyond a reasonable doubt, but its function is to determine from the evidence and the proper inferences therefrom, whether there was sufficient evidence to warrant the finding that the defendant was guilty beyond a reasonable doubt. *DeVaughn v. State,* 232 Md. 447, 194 A. 2d 109; cert. den. 376 U. S. 927, 11 L. Ed. 2d 623; *Basoff v. State,* 208 Md. 643, 119 A. 2d 917.

Appellant's first contention is that there was not sufficient

evidence of malice to have permitted the court to find him guilty of murder in the second degree. In arguing the point appellant concedes "that if he intended the harm of any person and as a result of that intention a bystander was killed, he could be found guilty of murder in the second degree," but because the court said it found "some evidence from which an inference could be drawn of momentary premeditation, which could elevate the offense to murder in the first degree, we do not feel that such evidence is beyond a reasonable doubt," he claims that "if there be no premeditation, there can be no evil intent."

Clearly, the law is not as appellant argues it to be. A felonious homicide is presumed to have been committed with malice aforethought and so to constitute murder in the second degree. The State bears the burden of showing that the killing was wilful, deliberate and premeditated so as to constitute murder in the first degree; the accused bears the burden of showing circumstances of alleviation, excuse, or justification which would reduce the offense to manslaughter. *Elliott v. State,* 215 Md. 152, 159-60, 137 A. 2d 130; *Grammer v. State,* 203 Md. 200, 100 A. 2d 257; *Chisley v. State,* 202 Md. 87, 95 A. 2d 577.

The absence of premeditation does not prevent there being present malice aforethought. In *Davis v. State,* 204 Md. 44, 51, 102 A. 2d 816, we said:

> "*Chisley v. State,* 202 Md. 87, defined malice and it is apparent from that definition in the context in which it is found, that in the absence of justification, excuse or some circumstance of mitigation, malice exists not only when there is an actual, express intent to kill, but may be inferred when there is an intent to do or inflict great bodily harm, or when one wilfully does an act or wilfully fails to do a duty and the natural tendency of the act or failure is to cause death or great bodily harm.
>
> "* * * Malice and, so intent to murder, may be inferred from all the facts and circumstances of the occurrence. The deliberate selection and use of a deadly weapon directed at a vital part of the body is a circumstance which indicates a design to kill, since in the

absence of evidence to the contrary, the law presumes
that one intends the natural and probable consequences
of his act."

The appellant seeks to alleviate his responsibility for the killing by arguing that the shooting was unintended and accidental and that he lacked capacity to commit murder because of his condition produced by epilepsy, drugs and alcohol.

The State produced testimony from four witnesses that the appellant theatened to shoot or kill anyone who tried to break up the fight. The trial judges believed this testimony rather than the version of the appellant. The State's version was supported by evidence sufficient for the triers of fact to have found malice in the killing and therefore murder in the second degree. Whether or not the appellant's physical condition was such as to prevent his having the capacity to commit murder in the second degree was for the trier of fact to determine. *Stansbury v. State*, 218 Md. 255, 146 A. 2d 17. There was sufficient evidence to support a finding that appellant was in control of his faculties when the shooting occurred. It was not contended that he then had an epileptic seizure, and the evidence as to the effects of the drugs and alcohol did not compel a finding that he was not relatively normal, rather it permitted a finding that he had sufficient and legal capacity to commit the crime of murder. See *Chisley v. State, supra; Saldiveri v. State,* 217 Md. 412, 143 A. 2d 70.

The second contention presented by appellant is that the court below erred in excluding evidence which he sought to introduce to show his physical condition the day before the shooting and to show that there existed dislike of the young male townsmen toward all pipeliners as a class, and that appellant had knowledge of prior clashes between some of the townspeople and some of the pipeliners.

In *Westcoat v. State*, 231 Md. 364, 367-68, 190 A. 2d 544, this Court stated that: "The real test of admissibility of evidence in a criminal case is the connection of the fact proved with the offense charged. Such evidence which has a natural tendency to establish the fact at issue should be admitted."

To show that appellant might have had a seizure the day

prior to that of the shooting does not tend to prove or disprove that appellant had a seizure at the time of the shooting. The evidence that appellant attempted to introduce to illustrate justification of his conduct was properly excluded. An incident which occurred ten days prior to the shooting and which involved persons other than the deceased and the appellant had no relevancy to the issue of lack of malice in the use of the weapon. The evidence proffered did not show that the animosity of the townspeople was directed at the appellant, individually; that appellant or the deceased had been involved in any of the previous quarrels between the two groups; or that the townspeople or the deceased made threatening gestures toward the appellant or the two fist fighters prior to the shooting. The evidence that was proffered did not tend to prove that the conditions at that time were such that the fist fight would have precipitated a riot between the townspeople and the pipeliners. The evidence appellant sought to introduce was collateral to the issue at hand. Cf. *Lloyd v. State,* 219 Md. 343, 149 A. 2d 369; cert. den. 359 U. S. 1014, 3 L. Ed. 2d 1039; *Martini v. State,* 200 Md. 609, 614, 92 A. 2d 456. See also 1 Wharton, *Criminal Evidence,* Section 173 (12th ed. 1955), and 40 C.J.S., *Homicide,* Section 208 a.

*Judgment affirmed.*