## STERLING *v.* STATE OF MARYLAND

[No. 2, September Term, 1967.]

*Decided December 7, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Patrick L. Rogan, Jr.,* with whom was *Lionel Bennett* on the brief, for appellant.

*Edward F. Borgerding, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Wade D. Ward, State's Attorney for Somerset County,* and *Alfred T. Truitt, Jr., State's Attorney for Wicomico County,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

A jury of his peers found Elisha Sterling, Jr., guilty of rape and the trial court sentenced him to death. The evidence of guilt is clear and free from doubt. The crucial question is whether there was probable cause for arrest without a warrant.

Sometime after 11:20 p.m., in the night of June 13, 1966, Ida Jean Crockett was asleep in the front bedroom of her home

242

when she was awakened by someone who "pinned" her to the bed, threatened to kill her with the knife he had in his hand if she moved or screamed, threw a quilt over her head and raped her. The victim lived on Johnson Creek near Crisfield in Somerset County with her husband and two of her children. Her husband, a waterman, was working at the time. The children (a girl of eleven and a boy of five) were asleep in an adjacent bedroom down the hallway out of which a light was shining through the house. The intruder left the house by 12:15 a.m. on June 14, 1966. As soon thereafter as she could, the victim gathered her children into her bedroom and screamed for help. One of the several neighbors who responded, notified the police. At the trial, the victim testified that upon awakening she touched—"felt the blackest man"—she had ever seen, that she "heard this er-er-er-er-er (stammering)" and that when she saw his shadow she knew "by his voice" that "he was black." That the victim had been raped was corroborated by Dr. C. G. Rawley, who, on examining her at her home and at the hospital, between 1:00 and 1:30 p.m. on June 14th, found a contusion of the labia majora and the presence of spermatozoa in the vagina.

Sergeant Robert D. Weir, of the Maryland State Police, arrived at the scene of the crime around 1:00 to 1:05 a.m., and was met by the victim, Trooper Whitby, the two neighbors who were the first to arrive and other neighbors. While the record does not positively indicate who gave him the requisite information as to what had happened, some one did for, as he testified, he began his investigation for such corroborative facts as were available by inspecting a "forced up" window in the dining-kitchen area through which the intruder gained entrance. Later, in daylight, he, and other police officers, traced the footprints leading to and from the window across a field to a county road and then here and there along the road to within a short distance of the home of the accused. Measurements of the distance between the coming and going footprints indicated that the intruder had walked in but run out. It had rained during the night and one of the footprints made a deep impression in a mud puddle. Prior to Sergeants Weir and Jones (Calvin C.) setting out to look for the man they had reason to believe was

the rapist, Sergeant Weir, who had been over the footprint route several times after it had been sealed off by the police, was aware from his examination of the footprint in the mud puddle that they were to look for a shoe with a crepe sole and a finely woven cloth top. As they were on their way toward Crisfield, they saw the suspect they had in mind on a farm tractor pulling a wagon, drove up along side of him, made "certain observations" and took him into custody because he was wearing "the type of shoe [they were] looking for." After his arrest, the defendant was placed in the police car, his shoes were removed from him and he was taken to the rear of the home of the victim, where his left shoe, after being matched to the footprint in the mud puddle, was determined to be similar. Thereafter the police requested and were allowed by the defendant to search his home. As a result, various pieces of his clothing were taken, all of which after proof of the chain of custody at the trial, were introduced as evidence. Later, the defendant was taken to Crisfield where he was fingerprinted and palmprinted.

Corporal Gary A. Coonradt, an identification expert, who, upon arrival at the home of the victim about 7:00 a.m. on the morning of June 14th, was briefed by Sergeant Weir, testified that, in company with the Sergeant, he traced the footprints leading to and from the rear of the house, took photographs of some of the footprints and made a plaster cast of one of them; that subsequently, in comparing the left shoe of the defendant with the footprints, he noted the similarity between the plaster cast and the shoes of the defendant and saw some dirt on the side above the instep of the left shoe; that he developed a latent fingerprint on the kitchen window and the headboard of the bed and four latent palm impressions on a linen cabinet which he identified as having been made by the defendant.

Other experts from the F.B.I. were also called as witnesses. One of them (Agent Cornelius G. McWright) testified that he found spermatozoa on the nightgown of the victim, a bed sheet and the shirt of the defendant. Another (Agent Paul M. Stombaugh) testified that he found negroid pubic and head hairs on the bedspread; that fibers from the clothing of the defendant matched fibers on the bed clothing; and that fibers from the

bedclothing and nightgown matched fibers found on the trousers and shirt of the defendant.

At the conclusion of the case for the State, the defendant made motions "for inspection" and "for judgment of acquittal." The trial court allowed counsel for the defendant to examine the files of the State and interrogate its witnesses out of the presence of the jury, but the judgment of acquittal was denied. After returning to the court room, one of the attorneys for the defendant stated for the record that he had determined through Sergeants Weir and Jones that their client was a suspect of the crime when he was picked up.

The defendant, after the court had been informed that it might be necessary to lead him because of his stammering, was called out of the presence of the jury for the sole purpose of having the record show that he had conferred with counsel regarding his right but not his obligation to testify in his own defense. The defendant did not testify in his own behalf and there were no exceptions to the instructions of the trial court.

The defendant, claiming that the seizure of his clothing and the taking of his finger and palm prints were the fruits of an illegal search and therefore inadmissible, contends that his arrest was unlawful.

It is well settled that a police officer may make an arrest without a warrant where he has probable cause to believe at the time of the arrest that a felony had been committed and that the person arrested had committed it. *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80 (1960) ; *Edwardsen v. State,* 243 Md. 131, 220 A. 2d 547 (1966) ; *Crumb v. State,* 1 Md. App. 98, 227 A. 2d 369 (1967).

At the time of the arrest in the present case, the arresting officers knew that a felony had been committed and, considering the record as a whole, we think they had probable cause to believe that the defendant had committed it. See *McChan v. State,* 238 Md. 149, 207 A. 2d 632 (1965)[1]; *Johnson v. State,* 238 Md. 528, 209 A. 2d 765 (1965) ; *Jones v. State,* 242 Md. 95, 218 A. 2d 7 (1966) ; *Duffy v. State,* 243 Md. 425, 221 A.

---

1. *Cert. den.* Jones v. Maryland, 384 U. S. 1021; *vac.* Griffin v. Maryland, 384 U. S. 893.

2d 653 (1966); *Gaudio v. State,* 1 Md. App. 455, 230 A. 2d 700 (1967); *Clayton v. State,* 1 Md. App. 500, 231 A. 2d 717 (1967); *Cottrell v. State,* 1 Md. App. 520, 231 A. 2d 919 (1967).

The record indicates that when the defendant was taken into custody and placed in the police car, the state police knew that the man who assaulted the woman was black and stammered, that the culprit had been wearing crepe sole shoes with a woven top and that the "going" footprint trail extended from the home of the victim and disappeared within a short distance of the home of the defendant. While the record does not specifically indicate what was said by the victim to the police when they first arrived at her home, there would seem to be, as was said in *Farrow v. State,* 233 Md. 526, 531, 197 A. 2d 434, 437 (1964), "a fair inference that she told them about the assault and what she knew concerning the identity of her assailant."

While mere suspicion does not constitute probable cause *Young v. State,* 234 Md. 125, 198 A. 2d 91 (1964), *Graham v. State,* 239 Md. 521, 212 A. 2d 287, all that is required is "a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Edwardsen v. State, supra,* at p. 136.

Since the arrest of the defendant was lawful, the seizure of his clothing and the taking of his finger and palm prints (assuming without deciding that such prints were fruits of the search [2]) were incidental to the arrest and were properly admissible as evidence. *Farrow v. State, supra; Graham v. State, supra; Barton v. State,* 2 Md. App. 52, 233 A. 2d 330 (1967).

The evidence in question, having been properly admitted, there is no question as to its sufficiency to support the conviction.

*Judgment affirmed.*

---

2. See Bynum v. United States, 262 F. 2d 465 (1958).