## GREENBERRY ROLAND JOHNSON *v.* STATE OF MARYLAND

[No. 13, September Term, 1969.]

*Decided October 16, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Frank B. Cahn, II*, for appellant.

*Dickee M. Howard, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City*, and *Robert C. Stewart, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

On Sunday, April 7, 1968, parts of Baltimore City were beset by massive rioting of such intensity that the Governor of Maryland imposed a 4:00 p.m. city-wide cur-

few under the emergency powers vested in him by Maryland Code, Article 41, Section 15B.[1]

At 7:30 p.m. appellant was observed by police as he was about to enter his parked car and, along with four other occupants of the vehicle, was arrested for violating the curfew—a misdemeanor under the statute. The arresting police officer, Charles Kirk, testified that at the time of the arrest, National Guard troops were stationed in the area; that because of "disturbances" then prevailing in the neighborhood, and because "quite a few people were being arrested during this time," the main concern of the police "was to get all prisoners off the street and into the stationhouse for booking." Kirk testified that when he arrested appellant beside his car, he observed "a large number of watches," together with "a large amount of currency" on the seat of appellant's vehicle in plain view. Kirk picked up "these articles" from the seat, locked the car, and thereafter took appellant and his companion to the police station.[2] Before departing,

---

1. The statute, which was enacted as an emergency measure and became effective April 5, 1968, empowered the Governor to proclaim a state of emergency during "times of public crisis, disaster, rioting, catastrophe or similar public emergency within the State," and authorized him to "promulgate such reasonable orders, rules and regulations as he deems necessary to protect life and property, or to bring the emergency situation within the affected area under control, * * *," including "the control of * * * persons on public streets and thoroughfares; [and] establishment of curfews * * *."

By his Executive Order of 12:15 p.m., April 7, 1968, the Governor proclaimed that "No person shall be allowed on the public streets or highways in the City of Baltimore between the hours of 4:00 p.m. on April 7, 1968, and the hours of 6:00 a.m. on April 8, 1968, unless for the purpose of answering emergency calls or to whom specific permission has been granted by the Attorney General of Maryland or his duly authorized agents."

It is not claimed that the Governor exceeded his lawful authority in establishing the curfew. Indeed, we think the vesting of such power in the Governor is beyond constitutional challenge. See *Sterling v. Constantin*, 287 U. S. 378; *Moyer v. Peabody*, 212 U. S. 78. See also Comment, *Constitutional and Statutory Bases of Governors' Emergency Powers*, 64 Mich. L. Rev. 290 (1965).

2. While Kirk testified that he did not then search the car, another police officer testified that the police flashed a search light throughout the interior of the vehicle, but did not look under the seats. Nothing, however, was found or seized as a consequence of this action.

he told one of the police officers "to keep an eye on the car." A large number of arrested persons were being processed at the police station when Kirk arrived with his prisoners; he, therefore, had to wait in line with appellant and his companions before they could be booked. Immediately after the booking process was completed, Kirk returned to appellant's vehicle and there undertook a detailed search of its interior, in the course of which he discovered two loaded guns, one under a floor mat and the other under a seat. He also found a quantity of cocaine and marihuana under the front seat on the driver's side of the vehicle. A period of thirty minutes had elapsed from the time of appellant's arrest to the time Kirk returned to appellant's vehicle and searched it.

Appellant was subsequently convicted at a court trial of (1) the unlawful possession of cocaine and marihuana, (2) carrying concealed weapons, and (3) violation of curfew.

Appellant's sole contention on this appeal is that the court erred in admitting into evidence, over his objection, the guns and narcotics seized from his vehicle without a warrant some thirty minutes after his arrest. Specifically, he contends that the search of his vehicle could not be deemed incident to his arrest since it was not conducted contemporaneously, either in time or place, with his arrest, as required by *Preston v. United States*, 376 U. S. 364. He also urges that it was improper to search the vehicle in any event because there are no fruits or evidence of the crime of curfew violation for which he was arrested.

While the trial judge did not detail his reasons for concluding that the search was lawful, we think his decision to admit the evidence was proper.

It is well settled that an automobile, unlike a dwelling or person, may be searched without a warrant where there is probable cause to believe that the auto harbors "the instrumentality of a crime or evidence pertaining to a crime." *Dyke v. Taylor Implement Mfg. Co.*, 391 U. S. 216, at page 221. The right so to search an automobile,

or other movable vehicle, does not depend on whether the searching officers first had probable cause to arrest the driver or other occupant. In *Carroll v. United States,* 267 U. S. 132, the first warrantless automobile search case to be decided by the Supreme Court, Chief Justice Taft said:

> "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for the belief that the contents of the automobile offend against the law. The seizure in such a proceeding comes before the arrest, * * *." 267 U. S. at 158-159.

Although *Carroll* brought into question the constitutional validity of a federal statute which permitted agents to search automobiles without a warrant where they had probable cause to suspect the carriage of contraband, the fact that the Court found the statute constitutional permitted law enforcement agents to conduct this type of search even where not authorized by statute. Such a search was upheld by the Supreme Court in *Brinegar v. United States,* 338 U. S. 160, where the transportation of liquor was again involved, and the rationale of *Carroll* and *Brinegar* was again approved in *Dyke.*

*Carroll* and cases following it have been recognized by us as authority for searches of automobiles based only on probable cause. In *Cornish and Gilman v. State,* 6 Md. App. 167, we said:

> "Independent of the question of the legality of appellants' arrest and whether the subsequent search of their vehicle could lawfully be justified as being incident thereto, the rule is well established that because of its mobility, a motor vehicle, unlike a home, may lawfully be searched without a warrant or previous arrest when the officer has probable cause in the constitutional sense to believe that the vehicle contains that.

which is subject to seizure, whether it be contraband, as here, or the fruits or instrumentalities of a crime." 6 Md. App. at 175.

To like effect, see *Laws and Dorman v. State,* 6 Md. App. 243; *Sweeting v. State,* 5 Md. App. 623.

We think probable cause to conduct a warrantless search of an automobile exists in the constitutional sense when the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are such as would warrant a man of reasonable caution in believing that the vehicle contained that which is lawfully subject to seizure, including the fruits, instrumentalities or evidences of a crime. See *Sweeting v. State, supra,* and cases cited at page 628. While a mere suspicion will never suffice to establish probable cause, neither is certainty a requirement. An officer is thus not required to have actual knowledge that the vehicle harbors such items at the time he undertakes his warrantless search. As stated by the Supreme Court in *Spinelli v. United States,* 393 U. S. 410, "only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause."

When asked why he returned to conduct a search of appellant's vehicle, Officer Kirk stated:

"A. Because articles found in the car at the time of the arrest, they had a large number of watches on them, plus a large amount of currency."

The Court then asked:

"You mean on the person or in the automobile?"

Kirk replied:

"This was in the automobile laying on the seat in view."

Kirk's testimony must, of course, be considered in light of the fact that at the time of appellant's arrest, there

existed in Baltimore City—and explicitly so proclaimed by the Governor of Maryland—"a state of public emergency and crisis," involving "Injuries to persons and destruction of property" of such magnitude as to necessitate calling the State militia into active service to enforce obedience to the law and bring the rioting to a cessation. By his several Executive Orders issued in pursuance of his Proclamation, the Governor prohibited the sale of alcoholic beverages and firearms, as well as the sale of gasoline, unless delivered directly into an automobile's gas tank. That these measures lend meaning to, and shed obvious light on the character of the crisis then raging in the City is readily apparent. And while the record contains little in the way of enlightening testimonial evidence depicting the state of events prevailing at the time of appellant's arrest, we may properly take judicial notice of the painful historic fact, known to all in Maryland, that Baltimore was then experiencing massive rioting, accompanied by open looting and burning of business establishments by the hundreds.[3] We think the fact, shown by the record, that National Guard troops were stationed in the area where appellant was arrested would permit an inference that that neighborhood was one directly affected by the crisis. Under these circumstances, and against such a background, we conclude that Officer Kirk, upon seeing the "large number of watches" and "large amount of currency" on the seat of appellant's vehicle—a vehicle occupied by five persons in flagrant violation of the curfew—had probable cause to believe that the watches and money had been unlawfully obtained during the rioting. Consequently, we think he had prob-

---

3. Judicial notice is appropriate in cases where facts are self-evident and notorious. *A & H Transp., Inc. v. Baltimore*, 249 Md. 518; *Macht v. Hecht Co.*, 191 Md. 98. The general rule authorizing courts to judicially notice matters of common knowledge applies to appellate courts, which generally will take judicial notice of any matter which the court below could have judicially noticed. See 5 Am.Jur.2d, *Appeal and Error*, Section 739. That the attention of the trial court was focused on the conditions existing in Baltimore City. at the time of appellant's arrest is reasonably evident from the record. Compare *Line v. Line*, 119 Md. 403.

able cause to believe that the vehicle harbored other items or articles which had been similarly unlawfully obtained.[4]

The primary justification for permitting warrantless vehicle searches solely on the basis of probable cause is because an automobile is so readily movable as to make impracticable the obtaining of a search warrant. But the rule has been applied to parked vehicles even where no immediate danger existed that stolen articles harbored therein would be removed. See *Sweeting v. State, supra,* at page 628. Under the facts and circumstances of this case, we think it a strong probability that the guns and narcotics would have been removed from the vehicle had the police been required to delay their search while seeking to obtain a search warrant.[5]

*Judgments affirmed.*

4. The fact that Kirk did not conduct a full-blown search of the vehicle at the time he arrested appellant does not detract from his right to search the vehicle at a later time, so long as probable cause still existed. It is plain, however, that Kirk's reason for not searching the car at the time of the arrest was because he deemed it more important to promptly remove curfew violators from the street.

5. Under the conditions existing at the time of appellant's arrest, the prompt obtaining of a search warrant would, we think, have been a virtual impossibility.