# MOBLEY AND KING v. STATE OF MARYLAND

[No. 32, September Term, 1973.]

*Decided October 29, 1973.*

Motions for rehearing filed November 21, 1973; denied November 26, 1973.

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William A. Hahn, Jr.*, for appellant Mobley and *Mark P. Hanley, Jr., Assigned Public Defender*, for appellant King.

*Josef E. Rosenblatt, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Assistant Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County*, and *Severn A. Lanier, Assistant State's Attorney for Baltimore County*, on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. DIGGES and LEVINE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which DIGGES, J., concurs at page 90 *infra.*

The appellants were convicted at a court trial of robbery with a deadly weapon and each was sentenced to eighteen years imprisonment. In *King and Mobley v. State*, 16 Md. App. 546, 298 A. 2d 446 (1973), the Court of Special Appeals affirmed the convictions in a characteristically lucid and detailed opinion written for the court by Judge Moylan. We granted certiorari to review, in light of *Chambers v. Maroney*, 399 U. S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970) and *Coolidge v. New Hampshire*, 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971), the constitutionality of the warrantless search of the automobile in which appellants were intercepted by the police shortly after the crime was committed.

On December 20, 1971, between 6:00 and 6:15 P.M., two male negro youths held up Eva Akers at gun point in her Sparrows Point store, taking $95.00 from the cash register.

Within a few minutes after the crime was committed, Officer Stephen Lucas arrived on the scene and obtained descriptions of the robbers from Mrs. Akers which he immediately broadcast over his police radio. The two negro males were described by Lucas as being between twenty-four and twenty-five years of age, one heavy, wearing a green army fatigue jacket; the other, thinly built, wearing a three-quarter length suede coat. Lucas obtained additional information from unidentified sources at the scene of the crime and a few minutes after his first transmission, put out a second broadcast giving a further description of the robbers and of an automobile.

Officer Leonard Malinowski, on patrol in the general area in which the crime was committed, heard a call over his police car radio between 6:15 and 6:30 P.M. to be on the lookout for a yellow and black Duster; "That the subjects in this car were believed to have just committed a robbery." Officer Robert Hafer, also patrolling in the area, heard both broadcasts over his police radio between 6:15 and 6:21 P.M., the information he received being that there had been an armed robbery at the Sparrows Point store; that one of the robbers was a "colored male approximately in his early twenties, approximately 5-foot-5 to 5-foot-7, heavy build, wearing an army fatigue jacket; the other subject wanted was also a colored male, early twenties, thin build, tall, and had a brown what they call suede three- quarter length car coat." The description of the "subjects wanted in the auto" was followed by a description of the vehicle as a Duster, yellow in color, with a black top, and that "it should be occupied by two or three colored male subjects."

Since all traffic outbound from Sparrows Point (a peninsula) had to pass over one of three bridges, Malinowski and Hafer each immediately moved to so-called "holdup positions" commanding a view of all exiting traffic. Within a matter of seconds after the second broadcast had been transmitted, the officers separately observed a Dodge Coronet, yellow in color, with a black top, occupied by three negro males, moving over the bridge away from Sparrows Point. The officers separately pursued the vehicle. Hafer

stopped it, Malinowski arriving on the scene a minute or so thereafter. The three men were ordered from the car. Lancy Cash, the owner and driver of the car, was wearing a three-quarter length brown coat. Appellant King was wearing a green army-type coat and appellant Mobley was wearing a blue jacket and blue gabardine pants. The three men were searched for firearms and a quick preliminary search was made of the interior of the vehicle. No incriminating evidence was found. The officers ordered the three men to drive their car to the police station; they did so, escorted by two police cars, one in front and one behind the appellants' vehicle. In this manner, as the officers testified, appellants "were taken" or "transported" to the police station where they were placed in different rooms. Their car was again searched, and a gun and $1.5 were found secreted in a console in the front seat. This incriminating evidence was introduced at the trial over appellants' objection that the search of the vehicle violated their Fourth Amendment right against unreasonable searches and seizures.

The Court of Special Appeals concluded that the only theory that could legitimate the warrantless search of the appellants' vehicle was the so-called "automobile exception" to the search warrant requirement first established in 1925 by *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543. Under that exception, a motor vehicle, unlike a home, may be searched without a warrant or previous arrest under appropriate circumstances when the officer has probable cause in the constitutional context to believe that the vehicle contains the fruits, instrumentalities, or other evidence of a crime. See, *Dyke v. Taylor Implement Mfg. Co., Inc.,* 391 U. S. 216, 88 S. Ct. 1472, 20 L.Ed.2d 538 (1968); *Brinegar v. United States,* 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Scher v. United States,* 305 U. S. 251, 59 S. Ct. 174, 83 L. Ed. 151 (1938); *Husty v. United States,* 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629 (1931); *United States v. Lee,* 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202 (1927). Since the rule is justified on the basis that an automobile is so readily movable as to make impracticable the obtaining of a search warrant, the existence of exigent circumstances must

be shown in addition to probable cause to validate the warrantless search. *Coolidge v. New Hampshire, supra; Chambers v. Maroney, supra.* We recognized and applied the doctrine in *Peal v. State,* 232 Md. 329, 193 A. 2d 53 (1963).

Probable cause to conduct a warrantless search of an automobile under *Carroll* and its progeny exists in the constitutional sense when the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are such as would warrant a man of reasonable caution in believing that the vehicle contained articles lawfully subject to seizure. See, *Duffy v. State,* 243 Md. 425, 221 A. 2d 653 (1966); *Edwardsen v. State,* 243 Md. 131, 220 A. 2d 547 (1966); *Young v. State,* 234 Md. 125, 198 A. 2d 91 (1964). The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse a mere suspicion. *Gilmore v. State,* 263 Md. 268, 283 A. 2d 371 (1971); *Sterling v. State,* 248 Md. 240, 235 A. 2d 711 (1967); *Graham v. State,* 239 Md. 521, 212 A. 2d 287 (1965); *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80 (1960). To satisfy the probable cause requirement, therefore, an officer is not required to have actual knowledge that the vehicle contains fruits, instrumentalities, or other evidence of a crime at the time he undertakes his warrantless search. ". . . [o]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. . . ." *Spinelli v. United States,* 393 U. S. 410, 419; 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). Of course, whether probable cause is shown to exist may be measured in terms of the collective information demonstrated by the record to be within the possession of the entire police team. *Hopkins v. State,* 239 Md. 517, 211 A. 2d 831 (1965); *Mercer v. State,* 237 Md. 479, 206 A. 2d 797 (1965); *Farrow v. State,* 233 Md. 526, 197 A. 2d 434 (1964).

The Court of Special Appeals agreed with the trial judge that probable cause existed for the officers to believe that the car in which appellants were riding contained evidence of the armed robbery of Mrs. Akers. It noted that the car

matched the color description of the suspected vehicle contained in the police lookout — a yellow car with a black top; that the perpetrators of the crime were known to be negro males in their early twenties and that the vehicle was occupied by three negro males in that age bracket, one of whom was wearing a distinctive jacket matching the description given in the lookout; and that the car was leaving the Sparrows Point area by the only available exit route, being stopped at a point approximately three miles from the scene of the crime, within a range of six to ten minutes after the crime had been committed.[1]

We think the record in this case contains evidence plainly supporting a finding of probable cause for the belief of the two officers, acting independently of each other, that the car each observed was the vehicle involved in the Akers robbery, and that it contained evidence of that crime. That the yellow car with a black top described in the police lookout was a Coronet, and not a Duster, is undoubtedly a negative factor in our assessment of the existence of probable cause; but it is not, in our view, a factor of such prominence as would override and negate the reasonableness of the officers' belief, based on all the information in their possession, that the vehicle they stopped was that described over the police radio. And we note that the clothing worn by two of the car's occupants (and not one, as indicated in the opinion of the Court of Special Appeals) matched the description in the police lookout — a green army jacket and a three-quarter length brown or suede coat.

In *Jones v. State*, 242 Md. 95, 218 A. 2d 7 (1966), the police

---

1. The court also noted that the negro occupants of the vehicle were stopped in a predominantly white neighborhood and that in that demographic setting "they represent a smaller population sample, within which the other identifying factors may concur, than they would in a predominantly Negro neighborhood, where the random chance of such concurrence would have a larger field of possibilities in which to operate." From this, the court concluded: "To the extent to which their presence in the neighborhood was more atypical than typical, to such an extent is the likelihood of mere coincidence diminished when all the other identifying factors do concur." King and Mobley v. State, *supra*, at 551-552. However sound the court's conclusion may have been, there is no evidence in the record establishing that Sparrows Point is a predominantly white neighborhood and we decline to take judicial notice of that asserted fact.

lookout immediately following a robbery in the Silver Spring area at 2:00 A.M. was for a "red sports convertible with a black top operated by a colored male, five foot eight, wearing a plaid shirt." An officer stopped a car matching that description shortly thereafter in the general area of the crime; it was driven by a negro male, later found to be wearing a plaid shirt. In finding probable cause to exist for a warrantless arrest, and search incident thereto, we said:

> "In this case, the descriptions of the suspected assailant and the car he was driving were both reasonably specific. A red sports convertible with a black top is a definite delineation of an unusual car, particularly if driven shortly after the incident in the general area at two o'clock in the morning. 'A colored male five foot eight inches, wearing a plaid shirt' sufficiently indicates the suspected assailant, particularly when he is driving the car described . . . ." (At page 100).

While no "probable cause" case is the exact duplicate of any other, we think *Jones* affords support to the finding that probable cause existed to search the vehicle in this case. Compare *McChan v. State*, 238 Md. 149, 207 A. 2d 632 (1965). And in *Chambers v. Maroney, supra,* the Supreme Court had no difficulty in concluding that a police lookout description of four robbers fleeing the crime scene in a blue compact station wagon, one wearing a green sweater and another a trench coat, afforded "ample [probable] cause to [police officers] "to stop [and search] a light blue compact station wagon carrying four men and to arrest the occupants, one of whom was wearing a green sweater and one of whom had a trench coat with him in the car." 399 U. S. at 46-47.

Appellants claim that the record does not disclose the actual information obtained by Officer Lucas at the crime scene concerning the automobile, and that in any event the description of the vehicle, which the arresting officers heard over their police radios, and upon which they acted, could not properly be considered in evaluating the existence of probable cause because it was obtained from an unidentified

source, not shown to be reliable within the strictures of *Aguilar v. Texas,* 375 U. S. 812, 84 S. Ct. 86, 11 L.Ed.2d 48 (1963). As a consequence, appellants maintain that the description of the vehicle was improperly admitted in evidence on the question of probable cause.

While it is clear that the trial judge erroneously refused to permit Officer Lucas to testify as to what he had been told by his unidentified source at the crime scene, we think Judge Moylan put the matter in proper perspective when he observed in his opinion for the Court of Special Appeals:

> ". . . it is clear that, being the only information available to . . . [Lucas] about the car, that was what he passed on in his radio alert. From what Officer Hafer and Officer Malinowski received, we deduce what Officer Lucas transmitted; from what Officer Lucas transmitted, we deduce what Officer Lucas heard from the unidentified informant."

Despite the fact that the record does not specifically indicate what was said by the unidentified source to Lucas when he arrived at the scene of the crime, it is plainly a fair inference that he told him about the car and provided a description of it. Compare *Sterling v. State, supra,* and *Farrow v. State, supra.*

On the record before us, we think it readily apparent that the unidentified individual provided his information concerning the automobile to officer Lucas under circumstances markedly similar to those involved in *Jones v. State, supra.* In that case, the description of the fleeing robber, and of his car, was provided to the police at the scene of the crime by unidentified individuals who had assembled there upon hearing the victim's screams. We noted that the test of the reliability of information received under such circumstances "is different from the criterion when there is time for the procuring of a search warrant." In holding that there was no constitutional impediment to utilizing information obtained from unidentified persons to establish probable cause for an arrest in the circumstances there prevailing, we said:

". . .When a crime of violence has been committed in the early morning hours, and the only chance of apprehending the suspected criminal seems to be a prompt apprehension of the car in which he was driving away, the investigating officer cannot be expected to take the time to ascertain and make notes of the names and backgrounds of all the persons at the scene who told him what they had observed. Our system of justice must be responsive, not only to the needs of individual liberty, but also to the rights of the community . . . ." 242 Md. at 101.

To like effect, see *Taylor v. State*, 238 Md. 424, 431, 209 A. 2d 595 (1965), where, in similarly approving the use of information obtained at the crime scene from an unidentified person, we noted that "this class of evidence is not admitted as substantive evidence to assist the State in establishing guilt, but simply for the purpose of determining whether the officers had probable cause . . . ."

We are in full agreement with the opinion of the Court of Special Appeals that a different rationale exists for establishing the reliability of citizen-informers than for establishing that of the more suspect and anonymous police informer; and "that the strictures of *Aguilar v. Texas . . .* [*supra*] and *Spinelli v. United States . . .* [*supra*] are aimed primarily at unnamed police 'informers' rather than at that broad class of secondary sources who are the victims of crime, the disinterested witnesses of crime, other disinterested civilian sources of information or other law enforcement officers." *King and Mobley v. State, supra*, at 554-555. To the cases there cited in support of that proposition, we add *United States v. Bell*, 457 F. 2d 1231 (5th Cir. 1972). We conclude, therefore, that the description of the yellow and black car furnished to the police by the unidentified individual at the scene of the crime was provided under circumstances making the information reliable and, as such, it was properly permitted in evidence.

That exigent circumstances existed, in addition to

probable cause, justifying the search of the vehicle without a warrant is, we think entirely clear from *Chambers v. Maroney, supra.* In that case, the Supreme Court stated that the precise question before it "concerns the admissibility of evidence seized from an automobile, in which petitioner was riding at the time of his arrest, after the automobile was taken to a police station and was there thoroughly searched without a warrant." 399 U. S. at 43. The evidence showed that a gasoline station attendant was held up at night and robbed by four men. A detailed description of the clothing worn by the robbers and of their car was immediately broadcast by police radio. Within an hour, a car answering the description was stopped by the police in a parking lot two miles from the robbery scene and its four occupants arrested. The car was driven by police to the station where it was promptly searched without a warrant and incriminating evidence discovered. After finding that there was probable cause to stop the car and arrest the occupants, the Court said:

"Neither Carroll . . . nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true as in . . . the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.

\* \* \*

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant

is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which is the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. *For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.* (Italics supplied)

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained . . . ." 399 U. S. at 50-52.

In *Coolidge v. New Hampshire, supra,* the Supreme Court stated that *Chambers* "held only that, where the police may stop and search an automobile under *Carroll,* they may also seize it and search it later at the police station." 403 U. S. at 463. Commenting further on *Chambers* in footnote 20 (at 463), the Court said:

". . . It is true that the actual search of the automobile in Chambers was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any 'exigent circumstances' had passed, and, for all the record shows, there was a

> magistrate easily available . . . [But] the rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station . . . ."

In *Coolidge,* the warrantless search of Coolidge's automobile was held to be unconstitutional for failure to obtain a valid search warrant. The facts there, however, were far different from those in *Chambers*, and those in the present case. The officers in *Coolidge* knew the identity of the vehicle and its owner; they had been in possession of ample probable cause to search the vehicle for several weeks and could have obtained a proper warrant for its search. The vehicle was immobilized upon a private driveway, and Coolidge had been arrested, and his wife placed in protective custody, before the search of the vehicle began. Under those circumstances, the Court held that "by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant, ' . . . and the 'automobile exception,' despite its label, is simply irrelevant." 403 U. S. at 462. Indeed, the fact that the police had an opportunity to obtain a search warrant in *Coolidge* was beyond challenge since one had been obtained, although it proved to be defective.

That the facts in the present case bring it within the ambit of *Chambers*, and not *Coolidge*, is too plain to require further discussion. We think the appellants' car was seized by the police when it was initially stopped; that it was, in effect, within police custody as it was being escorted to the police station sandwiched between two police cruisers; that exigent circumstances existed within the contemplation of *Chambers* at the time the car was searched, both on the highway, and later at the police station; and that the warrantless search which uncovered the incriminating evidence was constitutionally valid and proper.[2]

---

**2.** The Court of Special Appeals has considered the "automobile exception" to the search warrant requirement in a number of cases. See, for example,
Soles v. State, 16 Md. App. 656, 299 A. 2d 502 (1973);

Appellant King was identified at the trial by an eyewitness to the crime as one of the robbers. We have held that the testimony of one eyewitness, if believed, is sufficient to convict. *Caviness v. State*, 244 Md. 575, 224 A. 2d 417 (1966); *Turner v. State*, 242 Md. 408, 219 A. 2d 39 (1966). We thus find no merit in King's contention that the evidence was insufficient to support his conviction.

Nor do we find merit in appellant Mobley's contention that there was no evidence, legally sufficient, to justify his conviction. Judge Moylan, in an incisive analysis of the evidence, pointed out in his opinion for the Court of Special Appeals that Mobley was arrested in a getaway car, fleeing a crime scene a few minutes after the crime had been committed; that he was in the presence of King, who was demonstrated to have been one of the robbers; and that he was in joint exclusive possession of the gun and $115 found hidden in the car, which permitted the fact finder to draw the inference that Mobley was one of the robbers. (See, *Anglin v. State*, 244 Md. 652, 224 A. 2d 668 (1966), *Matthews v. State*, 237 Md. 384, 206 A. 2d 714 (1965), and *Booker v. State*, 225 Md. 183, 170 A. 2d 203 (1961)). In these circumstances, we think there was evidence before the Court, sitting without a jury, which showed directly, or circumstantially, or supported a rational inference of facts from which the trial judge could fairly be convinced, beyond a reasonable doubt, of Mobley's guilt of the crime of armed robbery, and accordingly, we conclude that the judgment of conviction was not clearly erroneous. *Abney v. State*, 244 Md. 444, 223 A. 2d 792 (1966); *DeVaughan v. State*, 232 Md. 447, 194 A. 2d 109 (1963). Maryland Rule 886 a.

*Judgments affirmed.*

Skinner v. State, 16 Md. App. 116, 293 A. 2d 828 (1972);
Bailey v. State, 16 Md. App. 83, 294 A. 2d 123 (1972);
Peterson, Deal and Hunt v. State, 15 Md. App. 478, 292 A. 2d 714 (1972);
Clayton v. State, 12 Md. App. 40, 276 A. 2d 671 (1971);
Middleton v. State, 10 Md. App. 18, 267 A. 2d 759 (1970);
Johnson v. State, 8 Md. App. 28, 257 A. 2d 756 (1969);
Sweeting v. State, 5 Md. App. 623, 249 A. 2d 195 (1968).

*Levine, J., dissenting:*

I disagree with the majority's conclusion that "exigent circumstances" prevailed when the search of the automobile was undertaken at the police station. Hence, notwithstanding the apparent similarity of the facts at bar to those in *Chambers v. Maroney,* 399 U. S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970), I respectfully dissent.

As the majority itself acknowledges, the "automobile exception," from the time of its initial pronouncement in *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), 39 A.L.R. 790, has been consistently "justified on the basis that an automobile is so readily movable as to make impracticable the obtaining of a search warrant." Manifestly, this rationale for the rule did apply when the car was initially halted and searched. Nevertheless, I can not share the view that the exigency continued once the occupants were safely in custody, and were prevented from gaining access to the car.

It is interesting to note this quotation from *Chambers, supra,* in the majority opinion:

> "Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. *Where this is true,* as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to *obtain a warrant for the search.*" 399 U. S. at 50-51 (emphasis added).

As applied to this case, that statement cannot be read to

permit any other result but that, given the probable cause for the search coupled with the "exigent circumstances," the police were confronted with the alternatives of searching the car near the bridge or seizing it, as they actually did, and then *"obtain[ing] a warrant for the search."* 399 U. S. at 51.

As the Court then proceeded to observe in *Chambers:*

" . . . As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. *Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." 399 U. S. at 51 (emphasis added).

However movable the car may have been when initially halted, it could not have been more immobilized than it was at the police station, where it was securely in the possession of the police while its occupants were in custody. Thus, the very *raison d'etre* for the "automobile exception" was lacking.

As Justice Harlan, dissenting in *Chambers,* so aptly stated:

"In sustaining the search of the automobile I believe the Court ignores the framework of our past decisions circumscribing the scope of permissible search without a warrant. The Court has long read the Fourth Amendment's proscription of 'unreasonable' searches as imposing a general principle that a search without a warrant is not justified by the mere knowledge by the searching officers of facts showing probable cause. The 'general requirement that a search warrant be

obtained' is basic to the Amendment's protection of privacy, and ' "the burden is on those seeking [an] exemption . . . to show the need for it." ' (citations omitted).

"Fidelity to this established principle requires that, where exceptions are made to accommodate the exigencies of particular situations, those exceptions be no broader than necessitated by the circumstances presented. . . ." 399 U. S. at 61.

Notwithstanding these well-settled Fourth Amendment principles, the majority relies on this statement from *Chambers* to bridge the gap between the justification for the search of the car at its initial apprehension and the subsequent search at the police station:

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to

choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. . . ." 399 U. S. at 51-52.

The weakness of this reasoning, which I am constrained to characterize as fictional, is exposed by the dissenting opinion of Justice Harlan:

"The Court concedes that the police could prevent removal of the evidence by temporarily seizing the car for the time necessary to obtain a warrant. It does not dispute that such a course would fully protect the interests of effective law enforcement; rather it states that whether temporary seizure is a 'lesser' intrusion than warrantless search 'is itself a debatable question and the answer may depend on a variety of circumstances.' . . . I believe it clear that a warrantless search involves the greater sacrifice of Fourth Amendment values." 399 U. S. at 63.

It is important to note that the crimes here were committed in the early evening, and the trip to the police station followed only minutes later. Yet, the record is silent on why it was not possible to obtain a search warrant while the car and its occupants were separately detained at the police station. Totally lacking at that point were the "exigent circumstances" upon which the majority justifies the warrantless search of the automobile. That, in these circumstances, the temporary seizure of the automobile pending obtention of a warrant was a "lesser intrusion" than a warrantless search is hardly a "debatable question."

I would therefore reverse the judgment of the court below on the grounds that the warrantless search of the automobile at the police station violated appellants' Fourth Amendment rights. Judge Digges authorizes me to state that he concurs in this opinion.